**SAMUEL L. EILERS**
California State Bar No. 289222
**MATTHEW C. BINNINGER**
California State Bar No. 265148
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California  92101-5030
Telephone:  (619) 234-8467
Samuel_Eilers@fd.org
Matthew_Binninger@fd.org

Attorneys for Mr. Peralta-Sanchez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY ALAN BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  14-CR-1308-LAB |
| Plaintiff, | |
| v. | **Statement of Facts and Memorandum of Law in Support of Motion to Dismiss Count 2 of the Indictment Pursuant to 8 U.S.C. § 1326(d)** |
| **Rufino PERALTA-SANCHEZ,** | |
| Defendant. | |

## SUMMARY OF ARGUMENT

Mr. Peralta-Sanchez immigrated to the United States in 1979 and became a Lawful Permanent Resident ("LPR") on December 1, 1990. He was placed in removal proceedings on April 14, 1999, and removed by an Immigration Judge ("IJ") on June 7, 1999. The IJ found that Mr. Peralta-Sanchez was removable as an aggravated felon based on his conviction for Driving Under the Influence with Priors ("felony DUI") in violation of California Vehicle Code §§ 23152(a), 23175. However, California felony DUI is not an aggravated felony, *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the law applies retroactively to removability findings, *United States v. Camacho-Lopez*, 450 F.3d 928 (9th Cir. 2006), and Mr. Peralta-Sanchez was not removable as charged. Thus, his deportation is invalid.

After being wrongfully stripped of his LPR status and deported to Mexico when he never should have been, Mr. Peralta-Sanchez was subjected to an Expedited Removal on July 18, 2012. Because Mr. Peralta-Sanchez never should have lost his LPR status in the first place, his subsequent Expedited Removal is the fruit of unlawful government action and, as a matter of fundamental fairness, cannot be used to launder the tainted 1999 IJ Removal. Independently, the Expedited Removal is also invalid because Mr. Peralta-Sanchez was denied the right to consult with counsel and seek withdrawal of his application for admission. These invalid deportations cannot not serve as the predicate to his prosecution under 8 U.S.C. § 1326.[1] Thus, Count 2 of the Indictment must be dismissed.

## STATEMENT OF FACTS[2]

### 1.    1999 IJ Removal Proceedings

Mr. Peralta-Sanchez immigrated to the United States in 1979 and became an LPR in 1990. The Immigration and Naturalization Service ("INS") issued a Notice to Appear ("NTA") in 1999, in which it alleged that Mr. Peralta-Sanchez had been admitted to the United States but was deportable based on the following allegations.

1.    [He was] not a citizen or national of the United States.

2.    [He was] a native of Mexico and a citizen of Mexico.

3.    [He] entered the United States . . . in 1979 . . .

---

[1]    Any and all reinstatements of the invalid 1999 IJ Removal and invalid 2012 Expedited Removal are rendered invalid as well. *See United States v. Arias-Ordonez*, 597 F.3d 972, 982 (9th Cir. 2010) ("a successful collateral attack on a removal order precludes reliance on a reinstatement of that same order in criminal proceedings for illegal reentry").

[2]    The following statement of facts and exhibits are based on information and evidence provided to defense counsel by the government in discovery. Mr. Peralta-Sanchez neither admits nor stipulates to the accuracy of such information and evidence, and he reserves the right to challenge their accuracy.

14-CR-1308-LAB

5.      . . . [He was] admitted to the United States at San Francisco,
California on December 1, 1990 as a Lawful Permanent Resident.

6.      [He was], on February 5, 1996, convicted . . . of DUI w/ Priors, in
violation of Section 23152a/23175 of the California Vehicle Code.

7.      For that offense, [he was] sentenced to . . . 16 months.

*See Exhibit A* (NTA, 04/14/99). The NTA charged that Mr. Peralta-Sanchez was
subject to removal from the United States pursuant to Section 237(a)(2)(A)(iii) of
the Immigration and Nationality Act ("INA") because he had been convicted of an
aggravated felony after admission. *Id*. On June 7, 1999, an IJ in Eloy, Arizona,
held a removal hearing regarding Mr. Peralta-Sanchez. At the hearing, Mr. Peralta-
Sanchez was ordered removed by the IJ based on the allegations and the sole
charge contained in the NTA. *See Exhibit B* (IJ Order, 06/07/99).

### 2.      2012 Expedited Removal Proceedings

On May 25, 2012, at approximately 11:00pm, Mr. Peralta-Sanchez was
found in the United States, approximately 11 miles west of the Calexico,
California West Port of Entry, by Border Patrol Agent ("BPA") C. Whittemore.
*See Exhibit C* (Probable Cause Statement, 05/26/12). BPA Geller made a decision
to reinstate Mr. Peralta-Sanchez's 1999 IJ Removal. *See Exhibit D* (Notice of
Intent/Decision to Reinstate Prior Order, 05/26/12). However, Mr. Peralta-Sanchez
was not physically removed at that time. Instead, Mr. Peralta-Sanchez was charged
criminally with being a Deported Alien Found in the United States. *See Exhibit E*
(Complaint, 12-MJ-8569, 05/29/12). The charge was subsequently reduced to a
misdemeanor for Improper Entry by Alien, and Mr. Peralta-Sanchez was sentenced
to time served on July 17, 2012. *See Exhibit F* (Judgment, 12-CR-2552, 07/18/12).
The following day, on July 18, 2012, Mr. Peralta-Sanchez was subjected to an
Expedited Removal based on his entry into the United States without inspection
near Calexico, California, on May 25, 2012, without a valid entry document. *See
Exhibit G* (Order of Expedited Removal & Departure Verification, 07/18/12).

## ARGUMENT

### COUNT 2 OF THE INDICTMENT MUST BE DISMISSED BECAUSE MR. PERALTA-SANCHEZ'S DEPORTATIONS ARE INVALID

In a criminal prosecution under 8 U.S.C. § 1326, "the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998). Because a deportation order is an element of the crime of illegal reentry, Mr. Peralta-Sanchez has a Fifth Amendment right to collaterally attack his deportation orders. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). As the Supreme Court has repeatedly said, "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id*. (emphasis in original) (citations omitted); *see also United States v. Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011).

In order to collaterally attack his prior deportations, Mr. Peralta-Sanchez must show: (1) exhaustion of available administrative remedies to seek relief from the deportation orders; (2) improper deprivation of the opportunity for judicial review; and (3) fundamental unfairness of the underlying deportation orders. 8 U.S.C. § 1326(d). "An underlying removal order is 'fundamentally unfair' if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (quoting *Zarate-Martinez*, 133 F.3d at 1197).

**1.    The 1999 IJ Removal is invalid under 8 U.S.C. § 1326(d) because Mr. Peralta-Sanchez was not removable as charged.**

      a.    Mr. Peralta-Sanchez was not removable as charged because his California DUI conviction is not an aggravated felony.

Mr. Peralta-Sanchez became an LPR in 1990. On April 14, 1999, the INS issued an NTA charging that Mr. Peralta-Sanchez was subject to removal from the United States pursuant to INA § 237(a)(2)(A)(iii) because he had been convicted

14-CR-1308-LAB

1  of an aggravated felony after admission. On June 7, 1999, the IJ found that Mr.
2  Peralta-Sanchez was removable as an aggravated felon based on his conviction for
3  felony DUI in violation of California Vehicle Code §§ 23152(a), 23175.

4      But only two years later, in 2001, the Ninth Circuit held that a conviction
5  for driving under the influence with bodily injury under California Vehicle Code §
6  23153 (a more serious offense) *cannot* be an aggravated felony. *United States v.*
7  *Trinidad-Aquino*, 259 F.3d 1140, 1146 (9th Cir. 2001). Then, the following year,
8  the Ninth Circuit addressed the exact conviction that is at issue in this case --
9  felony DUI in violation of California Vehicle Code §§ 23152(a), 23175 -- holding
10  that it "*cannot* qualify as an aggravated felony."  *See Montiel-Barraza v. INS*, 275
11  F.3d 1178, 1180 (9th Cir. 2002) (emphasis added). Two years later, the Supreme
12  Court confirmed these Ninth Circuit holdings, finding that an offense involving
13  DUI that contained only a mens rea of negligence *cannot* qualify as an aggravated
14  felony. *See Leocal*, 543 U.S. at 13. Thus, Mr. Peralta-Sanchez was not an
15  aggravated felon at the time of his 1999 IJ Removal and was wrongfully deported.

16      The Ninth Circuit found a removal order to be invalid in identical
17  circumstances as this case. In *Camacho-Lopez*, the defendant challenged a 1998
18  removal order in which the IJ sustained an aggravated felony charge of removal on
19  the basis of a conviction for vehicular manslaughter with gross negligence. 450
20  F.3d at 929. He argued that the Supreme Court's decision in *Leocal*, holding that
21  an offense with a negligent mens rea cannot be an aggravated felony, required a
22  finding that his order of removal was "fundamentally unfair" under 8 U.S.C. §
23  1326(d). The Court agreed, holding that "Camacho was removed when he should
24  not have been and clearly suffered prejudice." *Id*. at 930. The Court further found
25  that *all* the requirements of § 1326(d) were therefore satisfied and that the
26  defendant's prior removal was invalid. *Id*. Here, Mr. Peralta-Sanchez was also not
27  removable as charged and clearly suffered prejudice because he was removed
28  when he should not have been. Therefore, the 1999 IJ Removal Order is invalid.

b.   <u>*Leocal* applies retroactively to the IJ's erroneous determination that Mr. Peralta-Sanchez was removable as charged.</u>

Mr. Peralta-Sanchez's case presents a fact pattern **identical** to that of *Camacho-Lopez*, which is still good law despite the Ninth Circuit's recent decisions in *United States v. Lopez-Velasquez*, 629 F.3d 894 (9th Cir. 2010) (en banc), and *United States v. Vidal-Mendoza*, 705 F.3d 1012 (9th Cir. 2013). These two cases do **not** hold that the law in effect at the time of removal proceedings **always** controls for purposes of determining whether a removal order is valid. Rather, both of those cases deal only with an IJ's duty to advise of discretionary eligibility for relief -- not whether, under the categorical approach, the government can satisfy its burden of proving **removability** by clear and convincing evidence. The sole question in *Vidal-Mendoza* was the scope of an "IJ's duty under [8 C.F.R. §] 1240.11(a)(2)" to advise an alien of his apparent eligibility for discretionary **relief**. 705 F.3d at 1016. In this context, *Vidal-Mendoza* held that an alien's due process rights are not violated if an IJ informs him, based on controlling case law at the time of the removal hearing, that he is ineligible for relief, even though post-removal changes in the law would have altered the analysis. *See id*. at 1016-19; *see also Lopez-Velasquez*, 629 F.3d at 901 (explaining that "IJs are not expected to be clairvoyant" when advising of eligibility for relief).

In contrast, Mr. Peralta-Sanchez's case focuses on due process in an entirely different context, namely that of **removability**. *See generally Matovski v. Gonzales*, 492 F.3d 722, 738 (6th Cir. 2007) ("The due process accorded to the first stage of removal proceedings (determination of removability) differs from that accorded throughout the second stage (adjudication of applications for discretionary relief)."). Removability is not concerned with what an IJ should or should not know to properly advise an alien. Rather, removability is a legal determination for which an IJ's knowledge is immaterial. *Cf. Henderson v. United States*, 133 S.Ct. 1121, 1129-30 (2013) (question of legal error is not focused on what the "trial court should have known" but has broader equitable purposes).

Indeed, the burden of proof is even different, since the government bears the burden to establish that an LPR such as Mr. Peralta-Sanchez is removable, while a noncitizen would bear the burden to show that he is eligible for discretionary relief. *See* 8 U.S.C. §§ 1229a(c)(3)(A), 1229a(c)(4)(A). Thus, it makes no sense to apply *Vidal-Mendoza*'s IJ-focused rule regarding advisals about relief to the wholly legal question of removability.

Significantly, the Ninth Circuit considered this exact same question of retroactivity in *Camacho-Lopez*. There, the government raised the argument that *Leocal* "does not apply retroactively to invalidate Camacho's removal as an aggravated felon, and therefore, his proceedings were not 'fundamentally unfair.'" Brief of Plaintiff-Appellee at *13, *Camacho-Lopez*, 450 F.3d 928, No. 05-10455, 2005 WL 4120879. Specifically, the government claimed

> The Supreme Court's decision in *Leocal* and this Court's decision in *Lara-Cazares*[3] nearly fifteen years after Camacho's hearing do not invalidate the IJ's removal order. Granted, if Camacho were placed in deportation proceedings at the present time, he would have the benefit of the Supreme Court's decision in *Leocal*, and this Court's decision in *Lara-Cazares*. However, since Camacho is collaterally attacking his conviction six years after he was deported, such favorable decisions cannot be retroactively applied to his case.

*Id*. at *21. The government also argued that, "At the time of the hearing . . . the Board of Immigration Appeals had ruled that felony driving under the influence was a crime of violence . . . Thus, the IJ properly applied the law then in effect at Camacho's deportation hearing." *Id*. at *22 (citing *In re Magallanes-Garcia*, 22 I & N Dec. 1 (BIA 1998)). The government later conceded and the Court concluded that *Leocal* constituted a "substantive interpretation" of the generic federal definition and applied its definition of aggravated felony retroactively to find the IJ's finding of removability fundamentally unfair. *Camacho-Lopez*, 450 F.3d 930.

---

[3]     In *Lara-Cazares v. Gonzales*, 408 F.3d 1217 (9th Cir. 2005), the Court held that gross vehicular manslaughter under California Penal Code § 191.5(a) is not an aggravated felony.

7                                          14-CR-1308-LAB

1    *Camacho-Lopez* was issued seven years before *Vidal-Mendoza* -- thus,

2    *Vidal-Mendoza* lacked the authority to overrule it. *See United States v. Gay*, 967

3    F.2d 322, 327 (9th Cir. 1992) (a panel "cannot reconsider or overrule the decision

4    of a prior panel"). Moreover, the government in *Camacho-Lopez* presented the

5    retroactivity argument such that the question was not "merely lurk[ing] in the

6    record, neither brought to the attention of the court nor ruled upon." *See Webster

7    v. Fall*, 266 U.S. 507, 511 (1925). Accordingly, the Ninth Circuit has already

8    decided the question of whether the law applies retroactively to findings of

9    removability and has unequivocally ruled in Mr. Peralta-Sanchez's favor.[4]

10   Moreover, just last month, the Ninth Circuit issued an amended opinion

11   addressing whether the law at the time of removal proceedings controls in

12   determining whether an underlying removal order was invalid. *United States v.

13   Gomez*, ___ F.3d ___, 2014 WL 1623725 (9th Cir. Apr. 24, 2014). Notably, the

14   opinion contained a new footnote distinguishing cases involving eligibility for

15   relief from those where the noncitizen was not removable as charged.

16       *United States v. Camacho-Lopez*, 450 F.3d 928 (9th Cir. 2006), is
17       inapposite. It concerned whether a Supreme Court case decided after
         Camacho-Lopez's deportation proceedings was nonetheless
18       applicable on collateral review to determine whether he was subject
         to removal as charged -- not, as in this case, whether, although
19       removable, he was entitled to discretionary relief. Moreover, the
         government in *Camacho-Lopez* conceded that the new precedent
20       should be retroactively applied to answer the removability question.
         *Id*. at 930. Where, as here, the case concerns relief from removal, and
21       the government does not so concede, we look to the law as it existed
         at the time of the deportation proceedings to determine whether an
22       alien was prejudiced by the IJ's due process violations.

23   *Id*. at *10 n.12. Thus, it is *Camacho-Lopez*, rather than *Vidal-Mendoza*, that

24   applies to Mr. Peralta-Sanchez's claim that he was not removable as charged.

26       [4]    *See also United States v. Ramos-Cruz*, 2010 WL 5209344 (9th Cir.
27   December 16, 2010) (unpublished) (holding that the IJ's classification of Ramos-
     Cruz's California felony DUI conviction as an aggravated felony was error and "[t]hat
28   this error became apparent only in light of later-decided authority does not alter [the]
     analysis") (citations omitted).

8                                                            14-CR-1308-LAB

While the government may claim that both removability ***and*** the Government's concessions are required in order for *Camacho-Lopez* to apply, *Gomez* contradicts this. Indeed, the first two sentences of the footnote clearly state that *Camacho-Lopez* applies to cases involving removability. 2014 WL 1623725 at *10 n.12. Only ***after*** the Court stated this rule did it point to the government's concession as another reason to distinguish *Camacho-Lopez*. *Id*. Thus, *Gomez* further supports Mr. Peralta-Sanchez's claim that *Leocal*'s definition of aggravated felony applies retroactively and that he was therefore not removable as charged.

<u>c.</u>   <u>Prior BIA case law may not be relied upon to decide this due process issue that did not involve an area of agency expertise.</u>

At the time of Mr. Peralta-Sanchez's removal proceedings, there was no Supreme Court or Ninth Circuit decision stating that felony DUI was an aggravated felony. There was a BIA decision which held that a DUI may constitute an aggravated felony. *In re Puente-Salazar*, I & N Dec. 1006 (BIA 1999) (en banc). However, as *Lopez-Velasquez* and *Vidal-Mendoza* themselves acknowledge, pre-existing BIA precedent can be used to defeat a due process claim ***only on questions that would require deference to the agency***. Thus, even assuming there is no distinction between relief and removability, pre-existing BIA case law cannot be used to claim that Mr. Peralta-Sanchez was removable in 1999.

In *Vidal-Mendoza*, the Court noted that, despite the existence of on-point BIA precedent, "only the federal courts, and not the BIA," have the authority to determine questions outside of the agency's area of expertise. 705 F.3d at 1018 n.6. In support of this, *Vidal-Mendoza* cited to *Ledezma-Galicia v. Holder*, 636 F.3d 1059, 1067 (9th Cir. 2010), which employed the traditional *Chevron* analysis to defer to the agency's expertise only where the statute is ambiguous. *Id*. But where the statute is unambiguous, *Vidal-Mendoza* held that even on-point BIA precedent cannot be relied upon to determine whether a due process violation occurred. *Id*. (stating that *In re Soriano*, 21 I & N Dec. 516, 519 (BIA 1996), did not eliminate the IJ's duty to inform a noncitizen of a "reasonable possibility" of

14-CR-1308-LAB

continued availability of 212© relief).

Thus, cases such as *Lopez-Velasquez* have permitted reliance on BIA precedent that interpreted ambiguous terms in the INA where courts would have otherwise afforded the agency deference. *See Lopez-Velasquez*, 629 F.3d at 898 (defining "domicile" for purposes of the INA); *see also Holder v. Martinez Gutierrez*, 132 S.Ct. 2011, 2017 (2012) (affording *Chevron* deference to the BIA's interpretation of the terms "admitted" and "residence" in the INA). Here, however, prior BIA case law cannot be relied upon to interpret a federal criminal statute (18 U.S.C. § 16), an act of deference that an en banc panel of the Ninth Circuit has held is not permissible. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009) (en banc) ("The BIA has no special expertise by virtue of its statutory responsibilities in construing state or federal criminal statutes and, thus, has no special administrative competence to interpret the petitioner's statute of conviction."); *see also Olivas-Motta v. Holder*, 716 F.3d 1199, 1204 (9th Cir. 2013) (holding that it may defer to the BIA on substantive interpretations of a "crime involving moral turpitude" but not on the procedural issue of whether to apply the categorical approach). As such, the interpretation of a federal criminal statute is not an area in which the BIA's opinion merits any deference whatsoever -- particularly when determining federal criminal liability.

In sum, while the *Vidal-Mendoza* rule may apply to situations where ***circuit court law*** squarely established ***ineligibility for relief***, it cannot apply to situations such as Mr. Peralta-Sanchez's where ***BIA case law*** established ***removability***. Accordingly, in determining whether Mr. Peralta-Sanchez was removable as charged in 1999, this Court must look to *Leocal*, which holds that he was not. As such, Mr. Peralta-Sanchez's 1999 IJ Removal is invalid and cannot be used as a predicate to his criminal prosecution under 8 U.S.C. § 1326. Any reinstatement of the invalid 1999 IJ Removal is also invalid.  *See Arias-Ordonez*, 597 F.3d at 982.

14-CR-1308-LAB

**2.     The 2012 Expedited Removal is invalid under 8 U.S.C. § 1326(d) because it is the fruit of the invalid 1999 IJ Removal.**

a.     Mr. Peralta-Sanchez is excused from exhausting administrative remedies and was deprived of judicial review.

On July 18, 2012, Mr. Peralta-Sanchez was issued an Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1)(A)(I). Section 1225(b)(1)(A)(I) states, in pertinent part: "If an immigration officer determines that an alien . . . is inadmissible under section . . . 1182(a)(7) of this title, the officer shall order the alien removed from the United States ***without further hearing or review*** unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(I) (emphasis added); *see also id.* § 1225(b)(1)© (stating that an expedited removal order "is not subject to administrative appeal . . ."); 8 C.F.R. § 1235.3(b)(2)(ii) (stating that a person subject to an expedited removal order "is not entitled to a hearing before an [IJ] in proceedings conducted pursuant to section 240 of the [INA], or to an appeal of the expedited removal order to the [BIA]").

Because Mr. Peralta-Sanchez did not express an intent to apply for asylum or a fear of persecution, the statutory structure of the expedited removal provision deprived him of any possible administrative or judicial review. *See Barajas-Alvarado*, 655 F.3d at 1082 ("[T]he INA precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order."). Thus, by virtue of being expeditiously removed, Mr. Peralta-Sanchez has necessarily satisfied the first two elements of 8 U.S.C. § 1326(d). *See United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004).

b.     Mr. Peralta-Sanchez's Expedited Removal violated due process and caused him prejudice.

For decades, case law has recognized that LPRs enjoy special constitutional protections as a result of their deep ties to the United States and the hardship that would result if they were deported. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982). To this end, the Supreme Court has interpreted regulations to avoid an

outcome that would be gravely unjust to LPRs. *See Kwong Hai Chew v. Colding*, 344 U.S. 590, 597 (1953) (finding that an LPR who temporarily traveled abroad may not be expelled without a tribunal proceeding hearing and a "fair opportunity to be heard").

But when an LPR is wrongfully deported without making a knowing, intelligent, and voluntary waiver of his appellate rights, the options for righting this wrong are frequently nonexistent. In Mr. Peralta-Sanchez's case, for instance, we know that he was mistakenly stripped of his home, his family, his job, his residence -- indeed, "all that makes life worth living," *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922) -- in what was determined only two years after to be flagrant error. *See Trinidad v. Aquino*, 259 F.3d at 1146. When faced with such a gross violation of liberty and property rights, one might reasonably expect that Mr. Peralta-Sanchez would have been given a practical means of reopening his case in order to reclaim the lawful status of which he had erroneously been deprived. *See, e.g.,* 8 C.F.R. § 1003.44 (providing a means by which noncitizens wrongfully denied the opportunity to apply for 212© relief prior to *INS v. St. Cyr*, 533 U.S. 289 (2001) may move to reopen their cases).

Here, no such options existed. Rather, Mr. Peralta-Sanchez was barred from filing a timely motion to reconsider or motion to reopen his case because the statute requires such motions to be filed within 30 and 90 days, respectively. *See* 8 U.S.C. §§ 1229a(c)(6)(B), (7)(C)(I). And if Mr. Peralta-Sanchez **had** filed an untimely motion, it still would have been rejected under 8 C.F.R. § 1003.23(b)(1), which states that the agency lacks jurisdiction to consider a motion to reopen filed by a person who has already been removed from the United States.[5] *See also*

---

[5]     In the past several years, the Ninth Circuit has disregarded this regulation to hold that a noncitizen's physical removal from the United States does not bar him from filing a motion to reopen. *See Reyes-Torres v. Holder*, 645 F.3d 1073, 1077 (9th Cir. 2011). But under the law at the time of Mr. Peralta-Sanchez's

1    *Matter of Armendarez*, 24 I&N Dec. 646, 648 (BIA 2008) (stating that "reopening

2    is unavailable to any alien who departs the United States after being ordered

3    removed"). Even if Mr. Peralta-Sanchez somehow could have cleared these

4    jurisdictional hurdles by having his untimely motion accepted while he was

5    outside the United States, the Ninth Circuit would have lacked the ability to

6    judicially review it. *See Ekimian v. INS*, 303 F.3d 1153, 1159 (9th Cir. 2002)

7    (holding that the Court lacks jurisdiction to review the agency's sua sponte

8    decision not to reopen removal proceedings). In other words, even when it became

9    clear that the government was ***entirely*** at fault for Mr. Peralta-Sanchez's wrongful

10   removal, Mr. Peralta-Sanchez had absolutely no means by which to correct it.

11          Imagine the following scenario. You have been living in the same home for

12   most of your life when the landlord suddenly informs you that you are going to be

13   evicted and unceremoniously dumps you in the street. Two years later, the

14   landlord admits he made a mistake by evicting you. Despite his admission of error,

15   he claims you cannot return home because you failed to challenge his mistake

16   within 90 days and because you had to complete such a challenge while you were

17   still living in the house, even though the landlord would not have allowed you to

18   do either of these at the time. Moreover, even if you managed to find a way around

19   these obstacles and were able to challenge your eviction, the landlord still had sole

20   discretion on whether to grant your challenge. In the housing context, most people

21   would call this grossly unfair, even a travesty of justice. But in the § 1326(d)

22   context, noncitizens like Mr. Peralta-Sanchez who return to the border after

23   enduring such a scenario are greeted -- not with an opportunity to challenge the

24   injustice that was inflicted on them -- but with years of federal incarceration.

25   Thus, when an LPR has been wrongfully deprived of his home, the only

26   

27   removal in 1999 -- which both the government and the district court consistently
     argue should control the analysis -- such a motion would have been summarily
28   denied. *See Matter of G- y B-*, 6 I&N Dec. 159, 159-60 (BIA 1954).

1   conceivable path to reclaim one's lawful permanent residence is to attempt to

2   reenter the United States in order to contest one's prior order of removal before an

3   IJ. Indeed, the BIA has shown this to be an acceptable and effective way --

4   perhaps the **only** way -- to challenge the wrongful deprivation of one's permanent

5   residence. For instance, in *Matter of Farinas*, 12 I&N Dec. 467, 469 (BIA 1967),

6   an LPR was deported from the United States under an incorrect legal analysis and

7   illegally reentered 16 years later. Upon his return and apprehension, he did not

8   claim to have applied for permission to reenter; instead he denied removability on

9   the grounds that his previous deportation was improper and invalid. *Id.* The BIA

10  found that while he was deported and reentered as a nonimmigrant without

11  permission, he was nevertheless "not properly subject to deportation." *Id.* at 473.

12  Although Mr. Farinas had been convicted of burglary and sentenced to eight years'

13  imprisonment, the BIA exercised its authority to grant him -- *nunc pro tunc* – all

14  waivers necessary to return to the status of an LPR. *Id.* at 473-74. Thus, the BIA

15  found that Mr. Farinas was not deportable and terminated proceedings. *Id.*

16      Similarly, in *Matter of Sosa-Hernandez*, the BIA found that a noncitizen

17  who entered the United States as an LPR almost 20 years earlier was eligible to

18  seek concurrent waivers in order to regain his lawful status. 20 I&N 758-59, 763

19  (BIA 1993). Moreover, the grant of these waivers retroactively validated the LPR

20  status he had been previously accorded. *Id*. Finally, based on his newly-restored

21  LPR status, the BIA found that he possessed the necessary years with his green

22  card to apply for § 212© relief to waive the controlled substance conviction that

23  had occurred more than a decade after his admission. *Id.*

24      What *Matter of Farinas* and *Matter of Sosa-Hernandez* show is that, for

25  persons who have previously been removed as LPRs, the right to have their prior

26  deportation order reviewed in the context of an expedited removal hearing **by an**

27  **IJ** is the critical -- and perhaps the **sole** -- means of rectifying the prior error. But

28  when an LPR's prior order of removal is reviewed by a low-level Border Patrol

officer, as happened here, noncitizens such as Mr. Peralta-Sanchez are effectively stripped of any review of the prior erroneous order. In other words, when a former LPR is subject to an expedited removal without having his prior removal reviewed by an IJ (as *Farinas* and *Sosa-Hernandez* suggest is not uncommon), this constitutes a due process violation.

In many ways, when a Border Patrol officer issues an expedited removal order to a former LPR, that expedited removal order functions similarly to a reinstatement order in that it merely upholds a prior order of removal that did not comply with due process. The rationale laid out in *Arias-Ordonez*, 597 F.3d at 978, which held that a reinstatement could not serve as a predicate removal under § 1326, supports this. Like a reinstatement, an expedited removal is "an administrative procedure through which immigration officials can . . . effect an alien's departure from the country, bypassing the procedural requirements, and protections, of a regular removal proceeding." *Id.* at 978. And like reinstatement, expedited removal is a "narrow and mechanical process" in which "the requirement that immigration judges preside over removal proceedings because of their potential complexity" does not apply. *Id.* at 979 (internal quotations omitted). Thus, an expedited removal that merely "launders" a prior erroneous removal of an LPR and does not "provide an independent basis for conviction of illegal reentry" may itself violate due process. *Id.* at 981, 982.

In Mr. Peralta-Sanchez's case, this due process violation also caused him prejudice. Had Mr. Peralta-Sanchez's 2012 Expedited Removal order been issued by an IJ, Mr. Peralta-Sanchez would have been able to challenge his prior removal, as the noncitizens did in *Farinas* and *Sosa-Hernandez*. And because an IJ in 2012 would have undoubtedly been aware of *Trinidad-Aquino*'s holding that a DUI is not an aggravated felony, the IJ could have taken similar steps as in *Farinas* and *Sosa-Hernandez* by permitting Mr. Peralta-Sanchez to challenge his prior erroneous order -- a challenge that he had no ability to make elsewhere. But

where, as here, Mr. Peralta-Sanchez's expedited removal order was summarily issued by a Border Patrol officer, who had no authority to conduct such a retrospective review, Mr. Peralta-Sanchez had *no* options for obtaining such review. This directly violates the Supreme Court's mandate in *Mendoza-Lopez* that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be ***some*** meaningful review of the administrative proceeding." 481 U.S. 828, 837-38 (emphasis in original).

If a government agent violates a noncitizen's due process rights through unlawful action, common sense holds that the fruit of that unlawful action may not form the basis for the noncitizen's later criminal prosecution. But that is exactly what happened here: not only did the government mistakenly strip Mr. Peralta-Sanchez of "all that makes life worth living," *Ng Fung Ho*, 259 U.S. at 284, it now adds insult to injury by using the results of that unlawful action to try to send Mr. Peralta-Sanchez to prison.  Such a scenario provides the very definition of "fundamental unfairness" and is therefore invalid under 8 U.S.C. § 1326(d).

### 3. The 2012 Expedited Removal is also invalid because Mr. Peralta-Sanchez was deprived of the right to counsel and to withdrawal.

#### a. Mr. Peralta-Sanchez's due process rights were violated because he was not given the opportunity to consult with counsel.

"Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir.2004) (citing *Rios–Berrios v. INS*, 776 F.2d 859, 862 (9th Cir.1985)); *see also Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir.2005) ("The right to counsel in immigration proceedings is rooted in the Due Process Clause."). Thus, it is well-settled that "aliens in deportation proceedings are to be 'accorded due process.'" *United States v. Lara-Aceves*, 183 F.3d 1007, 1011 (9th Cir. 1999).

14-CR-1308-LAB

Moreover, Supreme Court precedent has made clear that an alien found in the United States falls under the protection of the Fifth Amendment. "[O]nce an alien enters the country . . . the due process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."); *see also United States v. Benitez-Villafuerte*, 186 F.3d 651, 656 (9th Cir. 1999) (holding that aliens who have entered the United States unlawfully are assured the protection of the Fifth Amendment due process clause).

Furthermore, Mr. Peralta-Sanchez was not in the same position as an alien encountered at a port of entry at the time of his expedited removal under immigration law. Rather, Mr. Peralta-Sanchez was found inside the United States and considered an alien seeking admission to the United States, as any alien without lawful status is considered to be under immigration law. An "arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any mean." 8 C.F.R. § 1.1(q) (providing definitions for terms used under Chapter 8). By contrast, "[a]pplicants for admission" are defined in the INA as follows:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1).

For these reasons, the Ninth Circuit's holding in *Barajas-Alvarado* is distinguishable from this case. 655 F.3d at 1086-87. In *Barajas-Alvarado*, the Ninth Circuit rejected the defendant's claim that he was entitled to the due process

14-CR-1308-LAB

right to consult with counsel. 655 F.3d at 1088. The Court described his claim as being "that non-admitted aliens who have not entered the United States have a right to representation," and noted that it was "aware of no applicable statute or regulation indicating that such aliens have any such right." *Id*. Here, however, Mr. Peralta-Sanchez was not an alien "who [had] not entered the United States." Instead, he was an alien who had, in fact, entered the United States and was found northwest of the Calexico West Port of Entry. *See Exhibit C*. He was therefore entitled to the opportunity to consult a lawyer. Furthermore, the Ninth Circuit has held that aliens in removal proceedings, whether in a kind of expedited removal proceedings or before an IJ, have the due process right under the Fifth Amendment to consult with counsel. *See United States v. Reyes-Bonilla*, 671 F.3d 1036, 1045 (9th Cir. 2012) (specifically holding, in the context of reinstatement proceedings, that an alien has ***both*** a due process and a statutory right to counsel).

According to *Procunier v. Martinez,* 416 U.S. 396 (1974):

> The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts . . . This means that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys. ***Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the court are invalid.***

*Procunier*, 416 U.S. at 419 (emphasis added). The Supreme Court has long recognized that because deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom[,] ... [m]eticulous care must be exercised lest the procedure by which [an alien] is deprived of that liberty not meet the essential standards of fairness." *Bridges v. Wixon*, 326 U.S. 135, 154 (1945). The Court has indicated that one way to ensure that the "standards of fairness" are met is by guaranteeing that aliens have the opportunity to be represented by counsel. *Biwot*, 403 F.3d at 1098. The high stakes of a removal proceeding and the maze of immigration rules and regulations make evident the necessity of the right to counsel. *Id*. The proliferation of immigration

laws and regulations has aptly been called a labyrinth that only a lawyer could navigate. *Id.*

Expedited removal proceedings under 8 U.S.C. § 1225(b)(1) effectively deprived Mr. Peralta-Sanchez of this Fifth Amendment right to consult with counsel. The Court in *Biwot* made clear that, in order to comply with due process requirements, a reasonable opportunity to obtain counsel must be given if the alien so desires. 403 F.3d at 1099. Mr. Peralta-Sanchez was neither informed of, nor given, this opportunity. 8 U.S.C. § 1225(b)(1). Although there is no bright-line rule as to what constitutes a reasonable opportunity, in the context of expedited removal proceedings under 8 U.S.C. § 1225(b)(1), an alien is given no opportunity whatsoever to contact an attorney, and the alien is never even advised of the right to counsel. As such, Mr. Peralta-Sanchez's due process right to counsel was violated in his 2012 Expedited Removal.

> b.  Mr. Peralta-Sanchez's due process rights were violated because he was not given the opportunity to seek withdrawal.

Mr. Peralta-Sanchez, by statute and regulation, is afforded the right to seek withdrawal of his application for admission. *See* 8 U.S.C. § 1225(a)(4); 8 C.F.R. § 1235.4. The failure of the immigration officials to allow Mr. Peralta-Sanchez to seek such form of relief results in a due process violation and fundamental unfairness because Mr. Peralta-Sanchez can establish plausible grounds for receiving such relief. As the Ninth Circuit has held, the requirement that the individual be "made aware that he has the right to seek relief" is mandatory and rooted in the Due Process Clause. *See, e.g., United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000), *United States v. Melendez-Castro*, 671 F.3d 950, 953-54 (9th Cir. 2012); *but see United States v. Vidal-Mendoza*, 705 F.3d 1012 (9th Cir. 2013). These circumstances further demonstrate the fundamental unfairness necessary for a collateral attack under 8 U.S.C. § 1326(d).

Mr. Peralta-Sanchez anticipates the government will rely on *United States v. Sanchez-Aguilar*, 713 F.3d 1108 (9th Cir. 2013), for the proposition that the

immigration officer was not required by due process to inform an alien of potentially available avenues of relief from removal. However, although the "right to be informed of potentially available forms of relief" may not be part of the process afforded by Congress in expedited removal proceedings, the right to apply for relief is. In a subsequent case, the Honorable Judge M. James Lorenz held that although an officer need not inform an alien of his right to apply for relief, an alien can establish prejudice if he demonstrates plausible grounds of being granted such form of relief. In *Arteaga-Gonzalez*, Judge Lorenz determined that there was no due process violation because of the officer's failure to advise Mr. Arteaga that he was eligible for withdrawal of application, but that Mr. Arteaga suffered prejudice because he had plausible grounds of being granted such relief from removal. 2013 WL 5462285 at 7. Here, the immigration officer should have given Mr. Peralta-Sanchez a meaningful opportunity to apply for withdrawal of application for admission. The officer's failure to do so constitutes a due process violation.

c.   Mr. Peralta-Sanchez need not show prejudice because deprivation of his right to counsel is inherently prejudicial.

As stated above, Mr. Peralta-Sanchez had a due process right to consult with counsel in his expedited removal proceeding. This right was violated when he was not properly informed of his right to consult a lawyer, nor given the opportunity to do so of his own accord. Because this violates a constitutional right, prejudice is inherent and need not be shown.

In *Estes v. Texas*, 381 U.S. 532 (1965), the Supreme Court noted that it had "found instances in which a showing of actual prejudice is not a prerequisite to a reversal. . . . It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a ***procedure*** employed by the [government] involves such a probability that prejudice will result that it is deemed inherently lacking in due process." *Id*. at 542-43 (emphasis added).

The skeletal nature of the expedited determination by an immigration officer

to remove Mr. Peralta-Sanchez allowed him virtually no chance to avoid removal. Furthermore, the lack of proper advisals in the removal proceedings also resulted in the deprivation of the right to counsel. Without the benefit of counsel, Mr. Peralta-Sanchez could not have known to seek the permission of immigration authorities to allow him to withdraw his application for admission. The consequence of removal precludes an alien from reentry for years, and may support a felony charge for illegal reentry. With neither the benefit of counsel nor advice by an immigration officer as to potential avenues of relief, and no evidence of an opportunity to be heard on any level, these expedited procedures that deprive the alien of the opportunity to consult with counsel inherently prejudice an alien such as Mr. Peralta-Sanchez.

Admittedly, the Ninth Circuit has not yet expressly adopted this position. *See Biwot,* 403 F.3d at 1100 ("we again leave unanswered the question whether a petitioner must show prejudice when he has been denied the right to counsel in removal proceedings."); *see also United States v. Barragon-Camarillo*, 2011 WL 5930388 (9th Cir. Nov. 29, 2011) (unpublished) (reviewing a similar claim for plain error only due to failure to raise below). However, holdings from other circuits can be persuasive authority on an unsettled issue before this Court. Recently, for example, the Third Circuit addressed a similar issue in *Leslie v. A.G. of the United States*, 611 F.3d 171 (3d Cir. 2010). Quoting from the Ninth Circuit's jurisprudence on the right to counsel in immigration proceedings, the *Leslie* court stated, "we 'warn[] the [government] not to treat [that right] casually.'" *Id.* at 181 (quoting *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990) (quotation and citation omitted)).

In *Leslie*, the Court considered whether an IJ's failure to comply with a regulation requiring that aliens be provided with a list of free legal counsel impacted the alien's fundamental rights to the extent of invalidating the deportation without regard to whether the violation substantially prejudiced the

1   alien. The Court held that it did. *Id*. at 182. In so holding, the court focused its

2   analysis on the right to counsel in immigration proceedings, explaining that "[t]he

3   right to counsel is a particularly important procedural safeguard because of the

4   grave consequences of removal." *Id.* at 181. The court reiterated that "[r]emoval

5   'visits a great hardship on the individual and deprives him of the right to stay and

6   live and work in this land of freedom. That deportation is a penalty -- at times a

7   most serious one -- cannot be doubted.'" *Id.* (quoting *Bridges*, 326 U.S. at 154).

8        The Court went on to explain that, "[c]ompounding the grave consequences

9   of removal, many aliens subject to removal proceedings are unfamiliar with the

10  complex adjudicatory process by which immigration laws are enforced . . .The

11  complexity of removal proceedings renders the alien's right to counsel particularly

12  vital to his ability to reasonably present his case." *Id.* (internal quotation omitted).

13  Accordingly, the  Court held that "[b]ecause the regulation at issue, requiring the

14  IJ to inform Petitioner of the availability of free legal services, protects the

15  fundamental right to counsel at removal hearings, we will enforce it without

16  regard to the existence *vel non* of prejudice resulting from its violation." *Id.* at 182.

17       Here, to be clear, there is no regulation requiring advisal of right to counsel

18  for aliens under § 1225(b)(1). The issue here is ***not*** whether there was a violation

19  of an agency regulation impacting the right to counsel.[6]  Instead, the argument that

20  no further showing of prejudice should be required is even stronger here than in

21  *Leslie*, because here the regulations do not even contemplate a right to counsel,

22  and Mr. Peralta-Sanchez was deprived completely of this right. Moreover, the

23  powerful language the Ninth Circuit has used to discuss the right to counsel in the

24

25       [6]    *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979) is

26  not to the contrary. That case held that the "[v]iolation of a regulation renders a
    deportation unlawful only if the violation prejudiced interests of the alien which were

27  protected by the regulation." Mr. Peralta-Sanchez is not arguing that there was a
    violation of a regulation requiring right to counsel. Rather, he is arguing that the

28  direct violation of his Fifth Amendment right to counsel is inherently prejudicial.

deportation context suggests that a violation of this right is, without more, prejudicial.

This Court should rule that the due process right to counsel is fundamental, such that when the government denies the right, no further showing is required to invalidate the proceeding. This conclusion finds strong support in the Ninth Circuit's previous analysis of the right to counsel in the Sixth Amendment context. A Sixth Amendment right to counsel violation is considered so serious as to constitute structural error, requiring ameliorative action with no further showing. *See Arizona v. Fulminante*, 499 U.S. 279, 294 (1991) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)). Although the scope of when and how the right to counsel applies under the Fifth and Sixth Amendments may be different, there is no reason that the remedy for a violation of that right, once it has attached, should be different. Indeed, the Ninth Circuit has previously held that the analysis of a right to counsel violation under the Sixth Amendment "applies with equal force" to right to counsel claims "arising out of the Fifth Amendment right to due process." *Dearinger v. Reno*, 232 F.3d 1042, 1045 (9th Cir. 2000).

> d.   Mr. Peralta-Sanchez was prejudiced by the due process violations because he had a plausible claim for relief.

Prejudice is also established if the defendant had a plausible ground for relief from deportation. *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1999). He does not have to show that he "actually would have been granted relief." *Ubaldo-Figueroa,* 364 F.3d at 1050. It is sufficient that the defendant show that he "could have" been granted relief at his removal proceeding. *United States v. Ortiz-Lopez*, 385 1202, 1204 (9th Cir. 2004). Once the defendant makes a prima facie showing that he had a plausible ground for relief, the burden shifts to the government to "demonstrate that the procedural violation ***could not have*** changed the proceedings' outcome." *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003) (emphasis added). Thus, it is not enough for the government to show that it was unlikely that the defendant would have been

1    granted relief, since "even a petitioner with . . . possibly a weak case has a right to

2    a fair hearing." *Zolotukhin v. Gonzalez*, 417 F.3d 1073, 1077 (9th Cir. 2005).

3        Mr. Peralta-Sanchez had a plausible claim to withdraw his application for

4    admission to the United States. Withdrawal of application for admission is not an

5    unusual or rarely-granted form of relief. In fact, withdrawal of application relief is

6    granted much more often than an expedited removal order is entered. The

7    Congressional Research Service found that of the aliens subjected to Expedited

8    Removal in 2001, 32.1 percent were ordered removed, and 62.2 percent were

9    permitted to withdraw their application for admission and return to their native

10   country without an order of removal against them. Congressional Research

11   Service, *Immigration Policy on Expedited Removal of Aliens*, 9 (September 30,

12   2005) (available at http://assets.opencrs.com/rpts/RL33109_20050930.pdf). In

13   2003, only 24.5 percent were ordered removed, and 72.5 percent were permitted to

14   withdraw their applications. *Id.* Although there are no statutes or regulations that

15   detail when an immigration agent may or should permit someone to withdraw their

16   application for admission, there is guidance in the Inspector's Field Manual. *See*

17   INS Inspector's Field Manual § 17.2(a) (2001) ("Field Manual"), available at

18   Westlaw FIM-INSFMAN 17.2). Although not a binding regulation, the Field

19   Manual gives insight into whether an immigration agent may have granted relief.

20   *See Barajas-Alvarado*, 655 F.3d at 1090 n.16. The Field Manual instructs

21   immigration agents to consider (1) the seriousness of the immigration violation;

22   (2) previous findings of inadmissibility against the alien; (3) intent on the part of

23   the alien to violate the law; (4) ability to easily overcome the ground of

24   inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or

25   public interest considerations. *See id.* at 1090 (citing the Field Manual).

26       Here, Mr. Peralta-Sanchez's immigration violation was not serious. To the

27   contrary, it was a run-of-the-mill case, where Mr. Peralta-Sanchez was caught

28   trying to cross into the United States at a place other than a Port of Entry. Mr.

14-CR-1308-LAB

Peralta-Sanchez did not use any false documents or lie to authorities. *See Barajas-Alvarado*, 655 F.3d at 1090 (noting that the use of fraud is disqualifying for withdrawal of application relief). Given the staggeringly high percentage of aliens permitted to withdraw their applications for admission to the United States, Mr. Peralta-Sanchez clearly had a plausible claim to be allowed to withdraw his application for admission and return voluntarily to Mexico. Because he was not given this opportunity, Mr. Peralta-Sanchez's suffered prejudice. The 2012 Expedited Removal is therefore invalid.[7] As a result, any reinstatement of the 2012 Expedited Removal is also invalid.  *See Arias-Ordonez*, 597 F.3d at 982.

## CONCLUSION

For the reasons above, the underlying deportation orders are invalid under 8 U.S.C. § 1326(d). Therefore, Mr. Peralta-Sanchez's Motion should be granted, and Count 2 of the Indictment must be dismissed.

Respectfully submitted,

Dated:  May 27, 2014

*s/ Samuel L. Eilers*
**SAMUEL L. EILERS**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Peralta-Sanchez
Samuel_Eilers@fd.org

---

[7]     By virtue of being expeditiously removed and deprived of the right to counsel and to seek withdrawal, Mr. Peralta-Sanchez has necessarily satisfied the first two elements of 8 U.S.C. § 1326(d). *See ,e.g., Barajas-Alvarado*, 655 F.3d at 1082; *Pallares-Galan*, 359 F.3d at 1096.