LAURA E DUFFY
United States Attorney
MICHELLE L. WASSERMAN
Assistant U.S. Attorney
California Bar No.: 254686
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-8431
Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>RUFINO PERALTA-SANCHEZ,<br><br>        Defendant | Case No.:  14CR1308-LAB<br><br>**UNITED STATES RESPONSE AND OPPOSTION TO DEFENDANT'S MOTION TO DISMISS COUNT 2 OF THE INDICTMENT**<br><br>Date:  June 9, 2014<br>Time: 2:00 P.M. |

The, UNITED STATES OF AMERICA, by and through its counsel, Laura E. Duffy, United States Attorney, and Michelle L. Wasserman, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's Motion to Dismiss.

# I

## STATEMENT OF FACTS

### A.    Defendant's Apprehension

On March 7, 2014 at approximately 11:20 P.M., Border Patrol Agent Eduardo Jacobo, who was monitoring the Remote Video Surveillance System, spotted two individuals hiding in the brush approximately 50 yards south of Highway 98, near Calexico, California.    Agent Jacobo communicated his discovery of the two individuals through the radio.    Border Patrol Agent Frank Reece responded to the area where the operator had last seen the two individuals.    Agent Reece was unable to locate the two individuals, but was able to track their footsign.    He and other agents then proceeded to follow the two individuals for approximately four hours, ultimately to a location approximately six miles north of the U.S./Mexico border, just south of Old Highway 80.    Defendant was apprehended at approximately 4:20 A.M.    Once he located the two individuals, Agent Reece conducted a field inspection of both individuals.    Both individuals, including one later identified as Defendant, admitted to being Mexican citizens with no legal right to enter or remain in the United States. Agent Reece placed Defendant under arrest.    Post-arrest Defendant was read his Miranda rights.    He admitted to being a Mexican citizen who had entered the United States illegally and who had been previously deported.    He further admitted that he intended to go to Fresno.

### B.    Defendant's Criminal History and Immigration History

Defendant is a Mexican citizen who became a Legal Permanent Resident on December 1, 1990.    His criminal history in the United States began almost as soon as his residency: in April, 1991 he was convicted of misdemeanor DUI, in violation of Cal. Vehicle Code § 23152(b), for which he was sentenced to 90 days jail and three years' probation.    In April, 1991 he gained another conviction for misdemeanor DUI, in violation of Cal. Vehicle Code § 23152(b), for which he was sentenced to 30 days

jail and three years of probation. In May, 1991, he was again convicted of misdemeanor DUI, in violation of Cal. Vehicle Code § 23152(b), and being an unlicensed driver, in violation of Cal. Vehicle Code § 12500(a), for which he was sentenced to 120 days jail and 5 years' probation. In July 1993, he was once again convicted of misdemeanor DUI, in violation of Cal. Vehicle Code § 23152(b), as well as Driving with a Suspended License, in violation of Cal. Vehicle Code § 14601 for which he was sentenced to 365 days jail. In November 1993, he was convicted of misdemeanor DUI, in violation of Cal. Vehicle Code § 23152(b), and being an unlicensed driver, in violation of Cal. Vehicle Code § 12500(a), for which he was sentenced to 180 days jail and five years' probation. In March 1996 he was convicted of felony DUI, in violation of Cal. Vehicle Code § 23152(a), for which he received 16 months prison.

Based on his felony DUI conviction, Defendant was placed into removal proceedings. [Def. Ex. A.] The Notice to Appear charged Defendant with being removable as an aggravated felon, under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act. [Id.] Defendant was subsequently removed by an Immigration Judge ("IJ") on June 7, 1999. [Def. Ex. B.] Defendant's removal hearing was initially scheduled for May 5, 1999. [Recording of IJ Hearing, Disk 1 attached hereto as Ex. 1; Transcription of IJ Hearing attached hereto as Ex. 3.] On that date the IJ informed Defendant, along with the rest of the group at the hearing, of his rights. [Ex. 3.] These included the right to appeal, and the IJ specifically informed Defendant "if you disagree with my decision you will have the right to appeal it to the board of immigration proceedings. You may also accept the decision. But if you make an appeal to the immigration service, I cannot deport you from the United States while your appeal is pending. And you will not be deported unless you lose in the appeal proceedings." [Ex. 3.] At that initial hearing Defendant indicated that he understood

his rights, and that he wanted to obtain a lawyer.  [Id.]  At his request, the matter was continued 30 days.  [Id.]

On June 7, 1999, Defendant had his continued hearing.  [Recording of IJ Hearing Disk 2, attached hereto as Ex. 2; Ex. 3.]  At that hearing Defendant admitted to each of the charges in the Notice to Appear.  [Ex. 3.]  Following Defendant's admissions the IJ informed Defendant:

> The immigration services is seeking to deport you, sir, because you have been convicted of a crime that is defined as an aggravated felony. Specifically, driving under the influence of alcohol has been determined to be a crime of violence by the board of immigration appeals. And it qualifies as a crime of violence if it is a felony and you receive a sentence of one year or more. In your case, you got a DUI conviction with a sentence of 16 months. So it seems to fit in that definition. And that is why the immigration service wants to deport you.
>
> [Id.]

The IJ then asked Defendant if he understood those charges and he said "Yes." [Id.]  Defendant further agreed that he could be deported for those reasons.  [Id.]  At the end of the hearing the IJ informed Defendant:

> Alright. Sir I am going to order your deportation from the United States to Mexico today because that's what federal law requires me to do. Doesn't give me any choice. You have the right to appeal my decision if you disagree with it or you may accept my decision. What you would you like to do?
>
> [Id.]

Defendant replied "I accept it."  He was removed from the United States that same day. [Warrant of Removal, attached hereto as Ex. 4.]  This order of removal was reinstated December 4, 2001, July 6, 2004, and May 23, 2012.  These removals roughly corresponded with Defendant's additional criminal convictions: in February 2000 he was convicted of felony possession of a controlled substance in violation of California Health and Safety Code § 11350, and felony DUI in violation of Cal.

Vehicle Code § 23152(b) and sentenced to 28 months prison. In September, 2000 he was convicted of misdemeanor illegal reentry in the Eastern District of California, and sentenced to six months imprisonment. In October 2002 he was convicted of 8 U.S.C. § 1326 in the District of Arizona, and sentenced to 30 months imprisonment.

On or about May 25, 2012 Defendant returned to the United States again, and was found approximately one mile north of the border near, Calexico, California hiding in a bush. [I-213, from May 26, 2012 Apprehension, attached hereto as Ex. 5.] Following this apprehension, on July 17, 2012 he was convicted of misdemeanor illegal reentry, here in the Southern District of California, and sentenced to 53 days imprisonment. On July 18, 2012, following the conclusion of his criminal case, Defendant was ordered expeditiously removed from the United States. [Def. Ex. G; Ex. 5.] He was removed from the United States that same day. [Id.] He returned almost immediately to the United States, and in November 2012 was convicted of felony illegal reentry, in violation of 8 U.S.C. § 1325 before this Court, in case number 12CR3370-LAB and sentenced to 21 months custody and 1 year supervised release. He is still on supervised release for this case. He was most recently removed from the United States January 30, 2014, following a Reinstatement of his Expedited Removal order. [Reinstatement and Removal Documents from January 30, 2014, attached hereto as Ex. 6.]

**B. PROCEDURAL HISTORY**

On May 7, 2014, a federal grand jury returned an Indictment charging Defendant with one count of Improper Entry by an Alien, in violation of 8 U.S.C. § 1325 and one count of Removed Alien Found in the United States, in violation of 8 U.S.C. § 1326. On May 13, 2014, Defendant was arraigned on the Indictment and entered a plea of not guilty. On May 27, 2014 Defendant filed a Motion to Dismiss Count 2 of the Indictment Based on an Invalid Deportation. [Dkt. 13.] This Response and Opposition follows.

**III**

**ARGUMENT**

In order to mount a successful collateral attack of a prior order of deportation in an illegal reentry case, a defendant must demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). A predicate removal order is "fundamentally unfair" for purposes of 8 U.S.C. § 1326(d)(3) if the deportation proceeding violated the alien's due process rights, and the alien suffered resulting prejudice. United States v. Arias-Ordonez, 597 F.3d 972, 976 (9th Cir. 2010) (citing United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004)).

In his present motion Defendant seeks to collaterally attack two separate deportation orders: his June 7, 1999 IJ Order and his July 18, 2012 Expedited Removal. Both attacks fail.

**A. Defendant's Collateral Attack of His June 7, 1999 IJ Order Fails**
    1. <u>Defendant Has Not Shown That He Exhausted His Administrative Remedies</u>

Exhaustion of remedies is a statutory prerequisite for a collateral challenge to a prior removal under 8 U.S.C. § 1326(d)(1). It is also a jurisdictional requirement. <u>See</u> 8 U.S.C. § 1252(d)(1) (providing that a "court may review a final order of removal only if – . . . the alien has exhausted all administrative remedies available to the alien as of right"); <u>Barron v. Ashcroft</u>, 358 F.3d 674, 678 (9th Cir. 2004) ("[W]e now join our sister circuits in squarely holding that § 1252(d)(1) mandates exhaustion and therefore generally bars us, for lack of subject-matter jurisdiction, from reaching the merits of a legal claim not presented in administrative proceedings below.").

An alien fails to exhaust remedies if he does not file a direct appeal from his order of removal to the Board of Immigration Appeals ("BIA"). <u>See</u> <u>United States v.</u>

Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000) ("A defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she did not exhaust administrative remedies in the deportation proceedings, including direct appeal of the deportation order."); cf. Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994) ("Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter.").

Here, Defendant entirely ignores the requirement that he establish exhaustion of his administrative remedies. [See Def. Mot. at 4-10.]   He therefore fails to establish the first prong of the 1326(d) analysis and this Court may deny his motion on these grounds alone.  Moreover, even had Defendant addressed this element, he would be unable to meet it.  Defendant never filed an appeal to the BIA from his order of removal.  On the contrary, despite being informed of that right in plain language in the group advisal stage of his removal hearing [Ex. 3 (IJ: "[I]f you disagree with my decision you will have the right to appeal it to the board of immigration proceedings. You may also accept the decision.")], Defendant expressly waived that right at the end of his individual hearing, and left no doubt such was his choice.  [Ex. 3 (IJ: "You have the right to appeal my decision if you disagree with it or you may accept my decision. What you would like to do?"  Defendant: "I accept it.").]

Under controlling law, this waiver was considered and intelligent, i.e., valid. United States v. Estrada-Torres, 179 F.3d 776, 781 (9th Cir. 1999) (per curiam) (considered and intelligent waiver where the IJ "asked Estrada-Torres individually, 'Do you accept the decision or wish to appeal?,'" and alien noted his acceptance), overruled other grounds by United States v. Rivera-Sanchez, 247 F.3d 905 (9th Cir. 2001) (en banc); United States v. Chavez-Huerto, 972 F.2d 1087, 1088-89 (9th Cir. 1992) (considered and intelligent waiver where, after stating that "if you agree with my decision you may accept it as final.  However, if you do not agree with my

decision, you have the right to appeal my decision to a higher court[,]" the IJ asked alien individually, "Mr. Rodrigo Chavez-Huerto, do you wish to appeal or do you accept the decision?," and alien replied, "I accept the decision.").

Defendant has not raised the exhaustion requirement at all, likely because he did not exhaust his administrative remedies and his failure to exhaust is not excused. The Ninth Circuit has found the exhaustion requirement excused in the limited circumstance where an alien was not informed of relief for which he was eligible, because the waiver of appeal was not "considered and intelligent." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1049 (9th Cir. 2003) (defendant exempt from exhaustion requirement "because the IJ did not inform him that he was eligible for relief from deportation."); United States v. Pallares-Galan, 359 F.3d 1088, 1096 (9th Cir. 2004) ("Because the IJ erred when she told Pallares that no relief was available, Pallares' failure to exhaust his administrative remedies cannot bar collateral review of his deportation proceeding."); cf. United States v. Hernandez-Arias, 745 F.3d 1275, 1280 (9th Cir. 2014) ("If the alien establishes a due process violation that prevented his waiver of appeal from being knowing and intelligent, he is excused from the exhaustion requirement.")

But as the Ninth Circuit has held, in determining whether an IJ properly informed an alien of his eligibility for relief, the Court must look to the law at the time of the deportation. United States v. Vidal-Mendoza, 705 F.3d 1012, 1017 (9th Cir. 2013) (holding that an IJ must inform alien of eligibility for relief "under the applicable law at the time of his deportation hearing" and that an IJ "need not anticipate future 'change[s] in law'" when determining eligibility for relief from removal). Here, at the time of Defendant's deportation, the BIA had held that DUI was an aggravated felony. See In re Magallanes-Garcia, 22 I. & N. Dec. 1 (BIA March 19, 1998) (construing Arizona DUI and concluding that it was a crime of violence under 18 U.S.C. § 16(b) and therefore an aggravated felony). Shortly

thereafter, the BIA held, en banc, that DUI was an aggravated felony. See In re Puente-Salazar, 22 I. & N. Dec. 1006 (BIA Sept. 29, 1999) (construing Texas DUI). Thus as the IJ correctly noted, at the time Defendant was deported "driving under the influence of alcohol has been determined to be a crime of violence by the board of immigration appeals." [Ex. 3.] Defendant was therefore correctly advised as to his eligibility for relief, and exhaustion is not excused. See Vidal-Mendoza, 705 F.3d at 1017; Ubaldo-Figueroa, 364 F.3d at 1049. Because Defendant has not met his obligation to establish exhaustion of his administrative remedies, and cannot establish exhaustion of his administrative remedies the Court should deny his motion.[1]

## 2. Defendant Was Removable As Charged In 1999

The crux of Defendant's argument is that, because the law changed two years after his deportation,[2] he was not removable as charged at the time of his deportation

---

[1]    Defendant's assertion that he was not removable as charged does not change the exhaustion analysis. If an IJ never tells an alien about relief for which he could have applied, the alien cannot meaningfully waive his right to appeal from the failure to grant that relief, therefore exhaustion is excused. See United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000) ("an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right"). This same issue does not arise as to the removability stage of the proceedings. Long before an alien even sets his first foot before an IJ, he will already know the charges upon which he stands to be removed, as they must be listed in a Notice to Appear. See 8 C.F.R. § 1003.15(b)(4) (Notice to Appear "must" include "[t]he charges against the alien and statutory provisions alleged to have been violated"). Further, the law is clear that aliens can only be removed for charges actually listed in a Notice to Appear. See Al Mutarreb v. Holder, 561 F.3d 1023, 1029 & n.8 (9th Cir. 2009). So, an alien will always know the charge the IJ sustained in finding him removable – such that if he disagrees with that ruling, he already knows everything he needs to know to meaningfully waive (or exercise) his right to appeal that ruling.

[2]    In 2001 the Ninth Circuit held that a different California DUI provision was not an aggravated felony. See United States v. Trinidad-Aquino, 259 F.3d 1140, 1146 (9th Cir. 2001). It addressed the provision under which Defendant was convicted in 2002. Montiel-Barraza v. INS, 275 F.3d 1178 (9th Cir. 2002).

in June 1999. [Def. Mot. at 5.] This makes no sense. At the time of Defendant's deportation, the IJ correctly applied binding BIA precedent and found Defendant removable as an aggravated felon. See <u>In re Magallanes</u>, 22 I. & N. at *9-10; 8 CFR § 1003.1 ("decisions of the Board, and decisions of the Attorney General, shall be binding on all officers and employees of the Department of Homeland Security or immigration judges in the administration of the immigration laws of the United States."). Thus, at the time of Defendant's deportation, he <u>was</u> removable as charged. Although the Ninth Circuit in <u>Vidal-Mendoza</u> addressed changes in the law in the relief, rather than removability context, its logic equally applies to removability. An IJ can no more be "clairvoyant" about future changes in the law as to removability, than it can be "clairvoyant" about future changes in the law going to eligibility for relief. See <u>Vidal-Mendoza</u>, 705 F.3d at 1017. Moreover, the Ninth Circuit has applied <u>Vidal-Mendoza</u>'s logic beyond just the removability analysis. <u>United States v. Gomez</u>, -- F.3d --, 2014 WL 1623725, at *10 n.12 (9th Cir. April 14, 2014) (applying <u>Vidal-Mendoza</u> to prejudice prong as well as due process prong of 1326(d) inquiry).[3]

Defendant's reliance on <u>United States v. Camacho-Lopez</u>, 450 F.3d 928 (9th Cir. 2006) for a contrary proposition is misplaced: there the Government conceded that a decision by the Supreme Court applied retroactively to the Defendant's deportation proceeding. <u>Id.</u> at 930; <u>see also</u> <u>United States v. Gomez</u>, -- F.3d --, 2014 WL 1623725, at *10 n.12 (9th Cir. April 14, 2014) (noting that the Government conceded retroactivity in <u>Camacho-Lopez</u>, and distinguishing instance where

---

[3]     It is worth noting that in the immigration context, the Ninth Circuit has rejected claims that subsequent changes in the law invalidate a deportation. See e.g., <u>Alvarenga-Villalobos v. Ashcroft</u>, 271 F.3d 1169, 1172 (9th Cir. 2001) (affirming denial of collateral attack of deportation order in immigration context, holding that "new rules are not to be applied retroactively on collateral review" and noting that the "deportation order was perfectly lawful under the law at the time he was deported.")

Government did not so concede). The Ninth Circuit accepted that concession without a single word of independent analysis. See id. Notably, in Camacho-Lopez, based on the Government's concession, the Ninth Circuit applied a change in the law both to removability and eligibility for relief, a holding the Ninth Circuit clearly rejected (and did not feel bound by) in Vidal-Mendoza. Camacho-Lopez, 450 F.3d at 930.

Defendant's argument taken to its logical conclusion would turn every collateral attack into a direct appeal of the IJ order, "because it would require courts to apply intervening changes in the law to the IJ's removal order in every case." Vidal-Mendoza, 705 F.3d at 1019. Moreover, as the Ninth Circuit has recognized, "[i]n general, [w]hen intervening law renders an alien eligible for discretionary relief for which he was ineligible at the time of his deportation hearing, the proper remedy is for the [alien] . . . to file a motion to reopen." United States v. Lopez-Velasquez, 629 F.3d 894, 899-900 (9th Cir. 2010). But Defendant did not appeal and did not file a motion to reopen his case. Because the IJ properly applied binding BIA precedent at Defendant's hearing, this Court should reject Defendant's contention that he was not removable as charged.

### 3. Vidal-Mendoza Does Not Exempt BIA Precedent From its Holding

Defendant claims that "Vidal-Mendoza held that even on point BIA precedent cannot be relied upon to determine whether a due process violation occurred." [Def. Mot. at 9.] The United States has reviewed that opinion, and cannot find this purported holding. Ostensibly, Defendant is referring to the "one example" discussed in Vidal-Mendoza, where the Ninth Circuit "ha[s] applied subsequent precedent in reviewing a deportation order under 1326(d)." 705 F.3d at 1017. That "narrow circumstance[]" involved the statutory changes implemented by Congress that limited the eligibility of § 212(c) relief. Id. at 1018; see also United States v. Leon-Paz, 340 F.3d 1003 (9th Cir. 2003). The Ninth Circuit found that before the federal courts weighed in on the retroactivity of those amendments, the IJ had a duty to inform an

alien of his apparent eligibility for relief.  <u>Vidal-Mendoza</u>, 705 F.3d at 1018 at n.6 (internal quotations omitted).  The present situation is a far cry from that "narrow circumstance."  <u>Vidal-Mendoza</u> does not, as Defendant would have this Court believe, establish a rule that BIA case law can never be relied upon to establish removability at the time of the deportation.  [<u>See</u> Def. Mot. at 10.]  This Court should reject this argument.

**B. Defendant's Collateral Attack of His July 18, 2012 Expedited Removal Fails**

    1.   <u>Defendant's Expedited Removal is not "Tainted"</u>

Even assuming that the IJ is flawed, based on legal precedent that did not arrive until two years after Defendant's deportation, Defendant's 2012 Expedited Removal ("ER") is still a good deport and did not violate due process or prejudice Defendant. Expedited removals may serve as a predicate removal for a prosecution under 8 U.S.C. § 1326.  <u>United States v. Barajas–Alvarado</u>, 655 F.3d 1077, 1086–87 (9th Cir. 2011).  At the time of Defendant's ER he was no longer a Legal Permanent Resident. [<u>See</u> Def. Ex. G (charging Defendant as "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing cared, or other valid entry document . . ."); 8 C.F.R. § 1001.1(p) (defining "lawfully admitted for permanent residence" and noting that "[s]uch status terminates upon entry of a final administrative order of exclusion, deportation, removal, or rescission.").  On July 18, 2012, Defendant was removed because he "attempted to enter the United States without inspection at or near Calexico, CA on or about May 25, 2012" when he was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document."  [Def. Ex. G.]  This constitutes a separate deportable offense from that raised in his 1999 IJ, therefore his prior deportation is irrelevant.  <u>See</u> 8 U.S.C. § 1182(a)(7)(A)(I); <u>United States v. Davalos-Martinez</u>, 537 Fed. Appx. 773, 774 (9th Cir. Aug. 16, 2013) (unpublished).  In other words, even assuming Defendant is correct regarding his first deportation, the Ninth

Circuit has indicated that engaging in "self-help" i.e. coming back to the United States illegally without a document is not the way to fix the situation and has upheld a deportation based on that subsequent independently deportable behavior. Davalos-Martinez, 537 Fed. Appx. at 774. Thus Defendant's argument that a subsequent deportation is somehow equivalent to a reinstatement and "launders" a prior erroneous removal is incorrect. See id. (distinguishing Arias-Ordonez, 597 F.3d 972, 982 (9th Cir. 2010)).

Defendant claims that he had to return to the United States illegally, and had no legal remedy available to him. [Def. Mot. at 12.] This is not the case. Although it is entirely speculative whether a motion to reopen would, or would not have, been successful, due to Defendant's failure to attempt a legal remedy, Defendant certainly could have pursued that option before returning to the United States illegally. Indeed, as Defendant concedes, his physical removal from the United States does not bar him from filing a motion to reopen. [Def. Mot. at 12; Coyt v. Holder, 593 F.3d 902, 907 (9th Cir. 2010) (holding that "physical removal of a petitioner by the United States does not preclude the petitioner from pursuing a motion to reopen" immigration proceedings).] Moreover, the Ninth Circuit has recognized the "presumption, read into every federal statute of limitation, that filing deadlines are subject to equitable tolling." Socop-Gonzalez v. I.N.S., 272 F.3d 1176, 1188 (9th Cir. 2001) (finding 90-day limitation period for motion to reopen subject to equitable tolling). Had Defendant filed the motion to reopen, notwithstanding the statute of limitations, the IJ could have still exercised his or her discretion and granted the motion to reopen. 8 C.F.R. 1003.23(b)(1)(iv) ("The decision to grant or deny a motion to reopen or a motion to reconsider is within the discretion of the Immigration Judge."). Defendant was not deported unlawfully pursuant to the law in effect at the time of his first deportation, and his own failure to even try to seek legal redress (despite numerous illegal reentries to the United States in the intervening years) is his fault and his alone.

Defendant's attempt to analogize his situation to that of an evicted tenant therefore fails.  [Def. Mot. at 13.]  In that analogy, Defendant's actions are equivalent to the tenant illegally reentering the premises years after the eviction, moving in, and then claiming he had a right to stay without the landlord's permission, with no obligation to try to find a legal remedy for the eviction.  This is preposterous. This Court should reject Defendant's self-help argument.

2. <u>Defendant Had No Right to Counsel</u>

As the Ninth Circuit found in <u>Barajas-Alvarado</u>, Defendant's "claim that he was denied his right to counsel, is meritless on its face."  <u>Barajas-Alvarado</u>, 655 F.3d at 1088 (distinguishing Expedited Removals from "formal removal proceedings, where the regulations provide a right of counsel.").  Expedited Removal proceedings do not provide for a right to counsel.  <u>See</u> 8 C.F.R. § 287.3 (noting right to counsel in immigration proceedings "[e]xcept in the case of an alien subject to the expedited removal provisions . . .").  Defendant's attempt to distinguish <u>Barajas-Alvarado</u> on the basis that the right to counsel should be different for an alien who tries to illegally enter through the Port of Entry, than for an alien who tries to illegally enter through the hills is unsupported by the statutory text. [Def. Mot. at 17.]  Moreover, the Ninth Circuit when faced with an almost identical argument and identical facts to those presented here did not hold that the absence of counsel constituted a due process violation.  <u>See</u> <u>United States v. Barragan-Camarillo</u>, 460 Fed. Appx. 637, 638 (9th Cir. 2011) (analyzing Expedited Removal for alien found seven miles north of the border).  In <u>Barragan-Camarillo</u>, the Ninth Circuit held that even assuming that denial of counsel was a due process violation, "Barragan-Camarillo does not explain how notice of the right to obtain counsel would plausibly have resulted in relief from removal" particularly in light of his post-Miranda admissions.  <u>See</u> <u>id.</u>  This Court should reject Defendant's argument regarding right to counsel.

3. Underline The Ninth Circuit Has Squarely Held that Failure to Advise An Alien of Eligibility for Withdrawal of Application of Admission Does Not Violate Due Process

In <u>United States v. Sanchez-Aguilar</u>, 719 F.3d 1108 (9th Cir. 2013) squarely held that "the right to be informed of potentially available avenues of relief from removal" is not among the procedural rights afforded to aliens in an Expedited Removal. <u>Id.</u> at 1111. The Ninth Circuit concluded that "[a]s a result, the immigration officer's failure to inform [defendant] of his ability to request withdrawal of his application for admission did not violate his due process rights. <u>Id.</u> Because <u>Sanchez-Aguilar</u> is directly on point, the Court should find that a failure to advise Defendant of any eligibility for withdrawal of application of admission did not violate due process.

In addition, Defendant fails to explain how he "applied" for admission such that he could withdraw such an application. Defendant was found one mile inside the United States, and never "applied" for admission. [Ex. 5.] Moreover, Defendant spends two pages of his motion arguing that he was <u>not</u> an alien seeking admission into the United States. [Def. Mot. at 17-18.] If Defendant was not an alien seeking admission, as he himself argues, it is axiomatic that he could not withdraw an application for admission.

Defendant's reliance on Judge Lorenz's opinion in <u>United States v. Arteaga-Gonzalez</u>, No. 12–CR–4704, 2013 WL 5462285 (S. D. Cal. September 30, 2013) (unpublished) is misplaced and misleading. There Judge Lorenz found a due process violation based on the United States' concession that there was no evidence that the defendant in that case had signed the reverse of the I-860 form as required by agency regulations. <u>Id.</u> at *4. Because the Court found a due process violation, it reached the prejudice prong of the analysis and found that the defendant, who at the time he was removed expeditiously had no criminal history, had not attempted to enter the United States with the intent to violate the law, and had at least the potential to overcome his

inadmissibility, had plausible grounds for receiving immigration relief.  Id. at *5-7.

But Judge Lorenz did not hold that due process requires that the alien be provided a

"meaningful opportunity to apply for withdrawal of application for admission." [Def.

Mot. at 20.]   To the contrary, the court followed Sanchez-Aguilar, finding "the

immigration officer's failure to inform Defendant of his ability to request withdrawal

of his application for admission did not violate his due process rights." Id. at *4.

4. Defendant Has Not Established A Due Process Violation

A 1326(d) collateral attack can succeed only if Defendant shows that "the entry of

the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3).  "[T]his standard requires

the defendant to establish both a due process violation in the underlying removal

proceeding and resulting prejudice." Sanchez-Aguilar, 719 F.3d at 1110.  Because

Defendant has not met his burden to establish a due process violation, this Court may

deny his motion and need not evaluate prejudice. Id.

**C. Defendant Has Not Established Prejudice**

Because the Ninth Circuit has squarely held that Defendant was not entitled to

counsel in an Expedited Removal proceeding, this Court may reject Defendant's

unsupported assertion that deprivation of counsel was inherently prejudicial. See

Barajas-Alvarado, 655 F.3d at 1088.  Moreover, the Ninth Circuit has not adopted this

finding and has actually found absence of counsel non-prejudicial where, as here, the

alien was read his Miranda warnings, and therefore advised of his right to counsel,

shortly after arriving at the Border Patrol station, and waived his right to counsel and

"admitted to the immigration officer the very facts that would support removal." [See

Barragan-Camarillo, 460 Fed. Appx. at  638; Ex. 5.]  The absence of prejudice is even

more true here, where Defendant was not actually given the Expedited Removal until

after he pled guilty to illegal reentry, when he ostensibly still had contact with his

court appointed criminal lawyer.  [Ex. 5.]  Defendant therefore suffered no prejudice

from any purported "deprivation" of counsel.

Finally, even assuming a due process violation, Defendant cannot establish "plausible grounds" for relief from deportation. Barajas-Alvarado, 655 F.3d at 1089; United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1998) ("[defendant] can demonstrate prejudice in this case only by showing that he had plausible grounds for relief from deportation."); United States v. Cisneros-Resendiz, 656 F.3d 1015, 1018 (9th Cir. 2011) (same).

As Defendant concedes, the only form of potential relief available to him was withdrawal of his application for admission. [Def. Mot. at 24.] This form of relief is discretionary. See 8 U.S.C. § 1225(a)(4) ("An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."); 8 C.F.R. § 1235.4 ("The Attorney General may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of . . . expedited removal under section 235(b)(1) of the Act . . . [N]othing in this section shall be construed as to give an alien the right to withdraw his or her application for admission."). Where, as here, the relief is discretionary, Defendant "must make a 'plausible' showing that the facts presented would cause the Attorney General to exercise discretion in his favor." Arce-Hernandez, 163 F.3d at 563-64; see also Barajas-Alvarado, 655 F.3d at 1089. Establishing plausibility requires more than a mere possibility. Barajas-Alvarado, 655 F.3d at 1089. The Ninth Circuit has rejected attempts to rely on examples of other individuals granted withdrawal to establish plausibility. See id. at 1089, 1091 n.17. The Ninth Circuit has similarly rejected attempts to rely on statistics to establish plausibility. See United States v. Corrales-Beltran, 192 F.3d 1311, 1318 (9th Cir. 1999) ("Even if Corrales-Beltran is correct that discretionary relief applications are granted fifty percent of the time, it would be sheer speculation to conclude, without more, that his appeal would have been successful."). In order to show plausibility, Defendant must show that "in light of the factors

relevant to the form of relief being sought, and based on the 'unique circumstances of [his] own case,' it was plausible (not merely conceivable) that the [officer] would have exercised his discretion in the alien's favor." <u>Barajas-Alvarado</u>, 655 F.3d at 1089.[4]

As noted in <u>Barajas-Alvarado</u>, the INS Field Manual sets forth six factors that the immigration officer should consider in evaluating a request for permission to withdraw. 655 F.3d at 1090. These six factors include:

> (1) The seriousness of the immigration violation;
> (2) Previous findings of inadmissibility against the alien;
> (3) Intent on the part of the alien to violate the law;
> (4) Ability to easily overcome the ground of inadmissibility (i.e., lack of documents);
> (5) Age or poor health of the alien; and
> (6) Other humanitarian or public interest considerations.

INS Field Manual § 17.2.

Defendant makes no meaningful attempt to meet his burden to establish plausible grounds for relief. [<u>See</u> Def. Mot. at 23-25.] Nor does he lay out any of the "unique circumstances" of his case to meet his burden. <u>Cf.</u> <u>Barajas-Alvarado</u>, 655 F.3d at 1089. Rather he relies almost exclusively on statistics, an approach the Ninth Circuit has explicitly rejected. <u>See</u> <u>Corrales-Beltran</u>, 192 F.3d at 1318. Moreover, none of the factors in the INS Field Manual weigh in his favor. At the time of his Expedited Removal he had already been deported by an Immigration Judge in 1999, and that order had been reinstated three times. He also already had two convictions for misdemeanor illegal reentry and a felony conviction for 8 U.S.C. § 1326.

---

[4] Defendant ignores <u>Barajas-Alvarado</u>, and incorrectly states that he need only show that he "could have" been granted relief. [Def. Motion at 23.] But <u>Barajas-Alvarado</u> clearly states the standard that this Court is to apply when evaluating withdrawal of application in the expedited removal context. <u>See</u> <u>Barajas-Alvarado</u>, 655 F.3d at 1089 (defendant must show that it was plausible that the officer would have exercised his discretion in the alien's favor).

Defendant's immigration violation on May 25, 2012 that led to the Expedited Removal was therefore serious and he had multiple previous findings of inadmissibility. At the time he was apprehended on May 25, 2012 he clearly had intent to violate the law, as demonstrated by his conviction for illegal reentry for the events on that date. Moreover he had no ability to overcome the ground of inadmissibility, and there were no concerns regarding his age, health, or other humanitarian reasons that would weigh in his favor. In sum, even assuming there was some due process violation, which there was not, Defendant cannot establish prejudice. The Court may therefore deny his motion.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant's motion to dismiss.

Date: June 4, 2014

Respectfully submitted,
LAURA E. DUFFY
United States Attorney

*s/ Michelle L. Wasserman*
MICHELLE L. WASSERMAN
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 14CR1308-LAB |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| RUFINO PERALTA-SANCHEZ, | |
| Defendant | |

IT IS HEREBY CERTIFIED THAT:

I, Michelle L. Wasserman, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **United States' Response and Opposition to Defendant's Motion to Dismiss Count 2 of the Indictment** on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System.

1. Samuel Eilers, Esq.

2. Matthew Binninger, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2014.

*s/ Michelle L. Wasserman*

MICHELLE L. WASSERMAN
