```
   1              UNITED STATES DISTRICT COURT

   2          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

   3

   4   UNITED STATES OF AMERICA,          .
                                          .
   5         PLAINTIFF,                   . NO.14-CR-1308-LAB
                                          .
   6            V.                        . JUNE 9, 2014
                                          .
   7   RUFINO PERALTA-SANCHEZ,            . SAN DIEGO, CALIFORNIA
                                          .
   8         DEFENDANT.                   . 3:10 P.M.
       . . . . . . . . . . . . . . . . . ..

   9
```

10

```
  11              TRANSCRIPT OF MOTION IN LIMINE HEARING
                  BEFORE THE HONORABLE LARRY ALAN BURNS
  12                  UNITED STATES DISTRICT JUDGE

  13   APPEARANCES:

  14   FOR THE PLAINTIFF:       UNITED STATES ATTORNEY'S OFFICE
                                BY:  MICHELLE WASSERMAN
  15                            880 FRONT STREET, ROOM 6293
                                SAN DIEGO, CALIFORNIA  92101
  16
         FOR THE DEFENDANT:     FEDERAL DEFENDERS OF SAN DIEGO, INC
  17                            BY: SAMUEL EILERS AND MATT BINNINGER
                                225 BROADWAY, SUITE 900
  18                            SAN DIEGO, CALIFORNIA  92101

  19   COURT REPORTER:          JULIET Y. EICHENLAUB, RPR, CSR
                                USDC CLERK'S OFFICE
  20                            333 WEST BROADWAY, ROOM 420
                                SAN DIEGO, CALIFORNIA  92101
  21                            JULIET_EICHENLAUB@CASD.USCOURTS.GOV

  22
         INTERPRETER:           DEBORAH BERRY
  23

  24

  25
```

15:10:28  1    THE CLERK:  CALLING MATTER NUMBER 15 ON CALENDAR,

2  14-CR-1308, UNITED STATES OF AMERICA VERSUS RUFINO

3  PERALTA-SANCHEZ.  COUNSEL, IF YOU COULD STATE YOUR APPEARANCE

4  FOR THE RECORD.

5        MS. WASSERMAN:  GOOD AFTERNOON, YOUR HONOR.  MICHELLE

6  WASSERMAN ON BEHALF OF THE UNITED STATES.

7        MR. EILERS:  GOOD AFTERNOON.  SAM EILERS, FEDERAL

8  DEFENDERS, FOR MR. PERALTA-SANCHEZ WITH MATT BINNINGER.

9        THE COURT:  I SIGNED THESE REQUESTS FOR DISCLOSURES

10  MS. WASSERMAN.  HAVE THEY BEEN GIVEN OVER YET, OR ARE YOU

11  WAITING FOR THE ORDER?

12        MS. WASSERMAN:  I'M WAITING FOR THE ORDER.  WE HAVE A

13  SIGNED STIPULATION AS TO FACTS IN THIS CASE.

14        THE COURT:  DO YOU NEED TO DISCLOSE THIS INFORMATION

15:11:25 15  BEFORE THE CONSIDERATION OF THE CASE?  MR. EILERS TOLD ME,

16  ALERTED ME THAT THERE WAS LIKELY TO BE A STIPULATED FACTS TRIAL

17  THIS MORNING.  DIDN'T SAY ANY MORE THAN THAT, BUT DOES HE NEED

18  THIS BEFORE HE ARGUES THE TRIAL?

19        MS. WASSERMAN:  WE'LL LEAVE IT UP TO THE COURT.  WE

20  SIGNED AN EX-PARTE RULING FOR THE COURT ON THE ISSUE.  BECAUSE

21  WE'RE NOT ACTUALLY CALLING THE WITNESS BECAUSE HE IS

22  STIPULATING TO THAT WITNESS' TESTIMONY, I'M NOT SURE THAT'S

23  NECESSARY.  BUT AGAIN, WE ARE SEEKING A RULING FROM THE COURT;

24  SO I'LL LEAVE THAT UP TO THE COURT.

25        THE COURT:  I DON'T THINK THERE'S ANY HARM IN GIVING

1  IT OVER.  TISH, FILE THE ORDER AND GIVE THE INFORMATION BACK,

2  AND MS. WASSERMAN CAN GIVE THAT TO MR. EILERS.

3          MS. WASSERMAN:  CAN YOU DO THAT ORALLY SUBJECT TO A

4  PROTECTIVE ORDER JUST GIVEN THE NATURE OF THE INFORMATION.

5          THE COURT:  SURE.  YOU GAVE ME A PROTECTIVE ORDER AS

6  PART OF THIS THAT I SIGNED.

7          MS. WASSERMAN:  CORRECT, JUST IN TERMS OF DEFENSE

8  COUNSEL.

9          THE COURT:  OKAY.  MR. EILERS, YOU'RE TO USE THIS

10  ONLY IN CONNECTION WITH THIS CASE AND NOT MAKE OTHER USE OF IT

11  OR DISCLOSE IT OTHERWISE.

12          MR. EILERS:  UNDERSTOOD.

13          THE COURT:  IS THERE ANY REASON WE WOULDN'T RULE THE

14  1326(D) MOTION INTO PRELIMINARY MATTERS TOMORROW?  I LOOKED AT

15  THE PAPERS.  BUT RATHER THAN BIFURCATE THIS, I'D PREFER TO JUST

16  DEAL WITH THAT FIRST THING TOMORROW.  IF IT'S NOT GRANTED, THEN

17  WE CAN GO FORWARD WITH THE STIPULATED FACTS.

18          MR. EILERS:  PERHAPS WE COULD DO EVERYTHING TODAY?

19          THE COURT:  INCLUDING THE TRIAL TODAY?

20          MR. EILERS:  IF THE COURT HAS TIME.  I DON'T IMAGINE

21  IT WOULD TAKE LONG.

22          THE COURT:  THAT'S OKAY WITH YOU?

23          MS. WASSERMAN:  THAT'S FINE, YOUR HONOR.  I JUST NEED

24  THAT INFORMATION FROM --

25          THE COURT:  I HAVE TO GET A WRITTEN WAIVER FROM THE

1    DEFENDANT, RIGHT?

2           MS. WASSERMAN:  WE HAVE A SIGNED WAIVER OF THE JURY

3    TRIAL.  WE ARE JUST WAITING FOR THE DEFENDANT TO SIGN THE

4    STIPULATED FACTS.

5           MS. WASSERMAN:  YOUR HONOR, IS IT OKAY IF I GIVE THE

6    ONE COPY TO DEFENSE COUNSEL TO REVIEW?  I APOLOGIZE.  I DIDN'T

7    BRING AN EXTRA COPY.

8           THE COURT:  SURE.  THAT'S FINE.

9           MR. EILERS:  YOUR HONOR, CAN WE HAVE A BRIEF MOMENT

10   JUST TO REVIEW THE INFORMATION THE PROSECUTOR JUST HANDED?

11          THE COURT:  OF COURSE.

12          ARE YOU READY?

13          MR. EILERS:  YES, YOUR HONOR.

14          THE COURT:  ALL RIGHT.  MR. PERALTA, GOOD

15   AFTERNOON.

16          THE DEFENDANT:  GOOD AFTERNOON.

17          THE COURT:  DO YOU HAVE A WAIVER OF JURY TRIAL FORM

18   ONE OF YOU?

19          MS. WASSERMAN:  I DO, YOUR HONOR.  I ALSO HAVE THE

20   SIGNED STIPULATION OF FACTS, AND I HAVE A COLOR COPY.  THERE'S

21   A BACK AND WHITE COPY OF THE EXHIBITS ATTACHED TO IT, AND I

22   HAVE A COLOR COPY OF THE EXHIBITS AS WELL, IF I MAY APPROACH.

23          THE COURT:  ALL RIGHT.  IT IS MR. PERALTA, RIGHT?

24          THE DEFENDANT:  YES.

25          THE COURT:  THERE'S A "S" BEHIND HIS SIGNATURE ON

1  THIS.  IT MAKES IT LOOK LIKE IT'S PERALTAS --

2          MR. EILERS:  SANCHEZ CHARGES.

3          THE DEFENDANT:  "S" FOR SANCHEZ.

4          THE COURT:  OKAY.  MR. PERALTA, YOUR LAWYER HAS

5  INDICATED TO ME THAT WHILE YOU'RE AWARE THAT YOU CAN HAVE YOUR

6  CASE TRIED TO A JURY, YOU WANT TO GIVE UP YOUR RIGHT TO A JURY

7  TRIAL AND PRESENT THE CASE TO ME, A JUDGE, AND ALLOW ME TO

8  DECIDE WHETHER YOU'RE GUILTY OR NOT GUILTY; IS THAT WHAT YOU

9  WANT TO DO?

10          THE DEFENDANT:  YES.

11          THE COURT:  ALL RIGHT.  I HAVE A WAIVER FORM THAT'S

12  BEEN SIGNED BY YOU IN WRITING.  IT'S A WRITTEN WAIVER FORM THAT

13  HAS THE NAME RUFINO PERALTA "S."  DID YOU SIGN THAT ON THE

14  FORM?

15          THE DEFENDANT:  YES.

16          THE COURT:  WAS IT READ TO YOU AND EXPLAINED TO YOU

17  BEFOREHAND WHAT THIS FORM REPRESENTS?

18          THE DEFENDANT:  YES.

19          THE COURT:  I WANT TO TAKE JUST A FEW MINUTES AND

20  MAKE SURE YOU UNDERSTAND THE NATURE OF THE RIGHT THAT YOU'RE

21  GIVING UP.  AS I MENTIONED TO YOU, YOU HAVE AN ABSOLUTE RIGHT

22  TO HAVE THIS CASE TRIED BY A JURY.  THAT WOULD BE A GROUP OF

23  CITIZENS.  WE PICK IT FROM THE VOTERS LIST TYPICALLY, AND WE

24  PICK THESE PEOPLE RANDOMLY, AND WE SEND THEM A SUMMONS TO COME

25  INTO COURT.  IF YOUR CASE WAS TO GO INTO A JURY TRIAL TOMORROW,

```
15:22:27   1   I WOULD SUMMON 35 PROSPECTIVE JURORS IN.  THEY WOULD ALL BE AT
           2   RANDOM.  IT WOULD BE MIX OF PEOPLE; OLD AND YOUNG,
           3   PROFESSIONAL, NOT PROFESSIONAL, EDUCATED, NOT EDUCATED; ALL
           4   DIFFERENT RACES, CREEDS.  AGAIN, IT'S A MIX.  WE DON'T KNOW
           5   WHAT WE'RE GETTING UNTIL THEY WALK THROUGH THE DOOR.  THEN YOU
           6   AND YOUR LAWYERS WOULD HAVE SOME SAY IN THE SELECTION OF
           7   ULTIMATELY THE COMPOSITION OF THE JURY.  WE ONLY PICK 12 PEOPLE
           8   OUT OF THE 35 TO DECIDE THE CASE, AND YOU COULDN'T CONTROL ALL
           9   OF THE PICKS OF THOSE PEOPLE, BUT YOU COULD CONTROL SOME OF
          10   THEM.  THAT'S BECAUSE YOU WOULD HAVE A RIGHT TO CHALLENGE TEN
          11   OF THE PROSPECTIVE JURORS WITHOUT ANY EXPLANATION.  IF YOU LOOK
          12   OVER AND SAID, THIS GUY DOESN'T LOOK FRIENDLY TO ME OR LOOKS
          13   LIKE SOMEONE WHO WILL PROBABLY NOT VOTE IN MY FAVOR OR WOULDN'T
          14   LISTEN TO MY SIDE OF THE STORY, YOU WOULDN'T EVEN HAVE TO TELL
15:23:23  15   ME WHAT THE REASON WAS; YOUR LAWYER JUST MARKS IT ON A SHEET,
          16   AND I WOULD REMOVE THAT PERSON.  AND SO IT'S THROUGH THAT
          17   PROCESS THAT YOU WOULD HAVE SOME SAY IN HOW THE JURY WAS
          18   COMPOSED.  THE GOVERNMENT WOULD ALSO HAVE SOME SAY, NOT AS MUCH
          19   AS YOU BECAUSE THEY ONLY HAVE SIX OF THOSE CHALLENGES.  BUT
          20   AFTER THEY USE OR DECIDED NOT TO USE THEIR SIX, AND YOU USED
          21   YOUR TEN OR NOT USED YOUR TEN, WE WOULD THEN TAKE THE FIRST 12
          22   PEOPLE WHO HAD NOT BEEN CHALLENGED BY EITHER YOU OR THE
          23   GOVERNMENT, AND THEY WOULD BE THE JURY IN THIS CASE.
          24        THEN THE CASE WOULD BE PRESENTED BY THE GOVERNMENT TO
          25   THE JURY, AND THEY WOULD HAVE TO CALL WITNESSES AND PUT ON
```

1    EVIDENCE TO SHOW YOU'RE GUILTY OF THIS CHARGE, AND THE JURY

          2    WOULD BE INSTRUCTED BY ME AS TO WHAT THE LAW IS, WHAT HAS TO BE

          3    PROVED.  I WOULD TELL THEM THAT THEY WERE TO PRESUME THAT YOU

          4    WERE NOT GUILTY OF THE CHARGE AT THE BEGINNING, THAT YOU WERE

          5    INNOCENT OF THE CHARGE, AND THAT THEY COULD ONLY CONVICT YOU OF

          6    THIS IF THEY BECAME CONVINCED FROM THE GOVERNMENT'S

          7    PRESENTATION OF EVIDENCE BEYOND A REASONABLE DOUBT, WHICH MEANS

          8    THEY WOULD FIRMLY BELIEVE THAT YOU'RE GUILT HAD BEEN SHOWN

          9    ACCORDING TO THE INSTRUCTIONS I GAVE.  AND THE JURY WOULD THEN

         10    HAVE TO BE UNANIMOUS IN THAT DECISION.  ALL THE JURORS WOULD

         11    HAVE TO AGREE THAT YOU HAVE BEEN SHOWN TO BE GUILTY BEFORE THEY

         12    COULD VOTE FOR GUILTY, AND I WOULD TELL THEM THAT AS WELL.

         13    IT'S ALSO TRUE IF THEY WERE GOING TO FIND YOU NOT GUILTY, ALL

         14    THE JURORS WOULD HAVE TO VOTE TO FIND YOU NOT GUILTY.

15:24:45 15              BUT THE POINT IS ABOUT A JURY TRIAL THAT YOU'RE

         16    GETTING A CONSENSUS DECISION.  12 PEOPLE ARE AGREEING TO THE

         17    OUTCOME IN THE CASE.  NOW THAT'S DIFFERENT FROM WHEN YOU'RE

         18    TRYING A CASE TO A JUDGE ALONE.  THEN ONLY THE JUDGE MAKES THE

         19    DECISION.  NOW, IT'S NOT SO DIFFERENT BECAUSE I APPLY THE SAME

         20    RULE OF LAW.  I FOLLOW THE SAME LEGAL PRINCIPALS.  I HAVE TO BE

         21    CONVINCED BEYOND A REASONABLE DOUBT THAT YOU'RE GUILTY, AND I

         22    WOULD NOT CONVICT YOU IF I DID NOT BELIEVE THAT.  I WOULD ALSO

         23    BEGIN THE CASE PRESUMING THAT YOU WERE NOT GUILTY, PRESUMING

         24    THAT YOU WERE INNOCENT.  BUT THE MAJOR DIFFERENCE IS IT'S JUST

         25    ME MAKING THE DECISION.  IT'S NOT 12 PEOPLE.  AND YOU KNOW, I

1   WOULD NECESSARILY BE UNANIMOUS BECAUSE I THERE'S JUST ONE OF

2   ME.  IF YOU HAVE A JURY, ALL 12 WOULD HAVE TO AGREE.  SO THAT'S

3   ONE OF THE DIFFERENCES.  YOU DIDN'T PICK ME AS THE JUDGE.  THE

4   CASE WAS RANDOMLY ASSIGNED TO ME.  I DIDN'T PICK YOUR CASE

5   EITHER.  BUT THAT'S HOW A COURT TRIAL IS DIFFERENT FROM A JURY

6   TRIAL.  NOT 12 PEOPLE; JUST ONE.  YOU DIDN'T HAVE ANY SAY IN

7   PICKING ME.  YOU'D HAVE SOME SAY IN PICKING THE JURY, AND OTHER

8   THAN THAT, IT'S THE SAME LEGAL STANDARDS ARE APPLIED.  DO YOU

9   UNDERSTAND THOSE BASIC DIFFERENCES BETWEEN A COURT TRIAL AND A

10  JURY TRIAL?  DO YOU UNDERSTAND THAT?

11          THE DEFENDANT:  YES.

12          THE COURT:  THE PENALTY THAT YOU FACE, I BELIEVE, IS

13  UP TO 20 YEARS; IS THAT CORRECT?

14          MS. WASSERMAN:  YES, YOUR HONOR.

15          THE COURT:  SO YOU FACE A PENALTY, AND THIS IS JUST

16  THE MAXIMUM PENALTY.  I'M NOT TELLING YOU, FIRST, THAT I FOUND

17  YOU GUILTY BECAUSE I HAVEN'T, OR THAT YOU FACE ANY TIME IN

18  JAIL; BUT IF YOU ARE CONVICTED, YOU FACE UP TO 20 YEARS --

19          MS. WASSERMAN:  YOUR HONOR, I THINK IT'S ONLY UP TO

20  TEN BECAUSE HE'S ONLY A PLUS FOUR.

21          THE COURT:  IS THAT RIGHT THEN?  THAT'S WHAT YOU

22  ADVISED HIM AS WELL?

23          MR. EILERS:  YES, YOUR HONOR.

24          THE COURT:  IT'S UP TO TEN YEARS NOT 20.  YOU FACE A

25  MAXIMUM OF TEN YEARS, A FINE OF $250,000, AND A PENALTY

1    ASSESSMENT OF $100.  YOU'RE ALSO SUBJECT TO A PERIOD OF

2    SUPERVISION IF YOU ARE CONVICTED AND YOU ARE SENTENCED TO JAIL,

3    AND THAT PERIOD OF SUPERVISION COULD BE UP TO THREE YEARS.  IF

4    YOU GO BACK TO MEXICO, IF YOU'RE SENT SOMEWHERE ELSE OUTSIDE

5    THE UNITED STATES, YOU WOULDN'T BE SUPERVISED.  BUT IF YOU

6    VIOLATED CONDITIONS OF THAT SUPERVISION THAT WERE SET EVEN

7    THOUGH IT WAS INFORMAL, YOU WOULD BE SUBJECT OF BEING SENT BACK

8    TO JAIL FOR A PERIOD OF TIME.  SO THOSE ARE THE PENALTIES

9    ASSOCIATED WITH THIS CHARGE.  DO YOU KNOW THOSE PENALTIES, AND

10   DO YOU UNDERSTAND WHAT I JUST SAID?

11            THE DEFENDANT:  YES.  YES.

12            THE COURT:  SO YOU HAD A CHANCE, ADEQUATELY, TO THINK

13   ABOUT THIS AND MAKE UP YOUR MIND?

14            THE DEFENDANT:  YES.

15:27:31 15            THE COURT:  AND YOU WANT ME TO TRY THE CASE RATHER

16   THAN TO PRESENT TO A JURY; IS THAT YOUR DECISION?

17            THE DEFENDANT:  YES.  YES.

18            THE COURT:  YOU JOIN IN YOUR CLIENT'S WAIVER OF RIGHT

19   TO A JURY TRIAL, MR. EILERS?

20            MR. EILERS:  YES, YOUR HONOR.

21            THE COURT:  ARE YOU AWARE OF ANY OTHER ADMONITIONS OR

22   INSTRUCTIONS HE NEED BE GIVEN BEFORE THE COURT ACCEPTS THIS

23   WAIVER?

24            MR. EILERS:  NOT THAT I'M AWARE OF.

25            THE COURT:  MS. WASSERMAN, ANYTHING ELSE YOU THINK I

1  NEED TO COVER WITH HIM?

2       MS. WASSERMAN:  NO, YOUR HONOR.

3       THE COURT:  THE COURT FINDS AS FOLLOWS, THAT THAT

4  DEFENDANT MADE A KNOWING AND VOLUNTARY, INTELLIGENT CHOICE TO

5  WAIVE HIS RIGHT TO A JURY TRIAL.  HE DOES SO WITH THE CONSENT

6  OF HIS COUNSEL WHO I FIND HAS ALSO FULLY INFORMED OF HIM OF THE

7  NATURE OF THE RIGHTS.  SO I DO ACCEPT THE WAIVE.  THE MATTER

8  WILL BE TRIED TO THE COURT ALONE.

9       NOW AS I UNDERSTAND IT, YOU'RE WILLING TO GO FORWARD

10 TODAY, AND THE TRIAL IS GOING TO BE ON A STIPULATION OF FACTS,

11 AND I HAVEN'T LOOKED AT IT YET, BUT I'VE BEEN PRESENTED WITH

12 JUST NOW WITH DOCUMENTATION THAT SAYS STIPULATION OF FACTS AND

13 TESTIMONY FOR BENCH TRIAL; IS THAT WHAT THE AGREEMENT IS, THAT

14 ESSENTIALLY THIS CASE WILL BE TRIED ON STIPULATED FACTS WITHOUT

15 LIVE TESTIMONY?

16      MR. EILERS:  YES.

17      THE COURT:  OKAY.  MR. PERALTA, LET ME ASK YOU ABOUT

18 THAT TOO.  YOUR LAWYER AND THE GOVERNMENT HAVE AGREED THAT THE

19 COURT CAN MAKE THE DETERMINATION ON THE BASIS OF FACTUAL

20 REPRESENTATIONS.  THEY HAVE PUT TOGETHER THIS SET OF FACTS, AND

21 THEY WANT ME TO READ IT AND MAKE A DETERMINATION OF WHETHER

22 ACCEPTING THESE FACTS IS TRUE.  THEY ARE ENOUGH TO FIND YOU

23 GUILTY OF THE CHARGE.  HAS YOUR LAWYER EXPLAINED THAT IS THE

24 PROCEDURE THAT WILL BE FOLLOWED IN THIS COURT TRIAL?

25      THE DEFENDANT:  YES.

1          THE COURT:  ARE YOU IN AGREEMENT WITH THE CASE

2  PROCEEDING THAT WAY ON WHAT WE CALL STIPULATED FACTS?

3          THE DEFENDANT:  YES.

4          THE COURT:  AND I ASSUME, MR. EILERS, YOU TOLD HIM

5  THE OPTIONS, THAT HE IF HE WANTED, HE COULD HAVE LIVE TESTIMONY

6  AND THE RIGHT OF CONFRONTATION AND RIGHT TO PRESENT ADDITIONAL

7  LIVE EVIDENCE IF HE CHOSE?  HE'S BEEN MADE AWARE OF ALL THAT?

8          MR. EILERS:  YES.

9          THE COURT:  ARE YOU IN AGREEMENT THEN WITH HIS

10  DECISION TO GO FORWARD ON THE BASIS OF THE STIPULATED FACTS

11  PRESENTATION?

12          MR. EILERS:  I AM.

13          THE COURT:  OKAY.  SO I WILL DO THAT.  BUT LET ME

14  TURN MY ATTENTION FIRST TO THE 1326(D) MOTION THAT'S BEEN

15  FILED.  I READ THE PAPERS ON THIS.  THE POINTS ARE NOT

16  UNFAMILIAR TO ME.  REALLY, THE MAIN DISAGREEMENT HERE HAS TO DO

17  WITH WHAT MAY HAVE BEEN PERCEIVED AS A SPLIT IN CIRCUIT

18  AUTHORITY ABOUT AT WHAT POINT DOES THE COURT TAKE INTO

19  CONSIDERATION CHANGES IN THE LAW.  I'VE RULED ON THIS BEFORE.

20  I THINK THE NINTH CIRCUIT HAS AFFIRMED MY DETERMINATION ON THIS

21  BEFORE.  THE NEWER CASE IS THE ONE THAT I THINK HAS THE MOST

22  EXHAUSTIVE DISCUSSION BY JUDGE CALLAHAN I BELIEVE.  ISN'T SHE

23  THE AUTHOR OF THE CASE YOU RELY ON?

24          MS. WASSERMAN:  VIDAL-MENDOZA?

25          THE COURT:  YES.

1          MS. WASSERMAN:  LET ME CHECK.

2          THE COURT:  I'M AWARE OF THE EARLIER CASE WITH JUDGE

3 REINHARDT THAT'S ALSO DISCUSSED IN THE BRIEFS WHERE THERE ISN'T

4 GREAT ATTENTION PAID TO THIS ISSUE OF RETROACTIVE APPLICATION.

5 I HONESTLY THINK THE NEWER CASE IS THE BETTER AUTHORITY.  IT'S

6 THE NEWER AUTHORITY.  TO THE EXTENT THERE'S ANY SPLIT, I WOULD

7 RECONCILE IT IN FAVOR OF VIDAL-MENDOZA'S HOLDING.  THAT HOLDING

8 IS ESSENTIALLY IF THE DEPORTATION WAS LEGAL AT THE TIME, EVEN

9 THOUGH IN THIS CASE THE DEFINITION OF AGGRAVATED FELONY HAS

10 CHANGED OVER TIME, BUT THAT'S NOT A BASIS FOR DISRUPTING THE

11 PRIOR DEPORTATION OR DECLARING IT'S ILLEGAL; THAT IS, DIFFERENT

12 STANDARDS WOULD BE APPLIED TOGETHER, AND IT WOULD MAYBE NOT

13 PASS MUSTER TODAY DOESN'T MEAN THE DEFENDANT CAN GO BACK AND

14 ESSENTIALLY COLLATERALLY ATTACK THE DEPORTATION BASED ON A

15 DIFFERENT UNDERSTANDING OF THE DEFINITION OF AGGRAVATED FELONY

16 AS IT APPLIES TO A PARTICULAR OFFENSE; IN THIS CASE, FELONY

17 DRUNK DRIVING.  IT WASN'T CLEAR TO ME EXACTLY WHAT THE BASIS OF

18 THE FELONY DRUNK DRIVING CASE WAS.  IT'S REPRESENTED TO ME HE

19 GOT A SENTENCE OF MORE THAN A YEAR.  IT WAS A FELONY, AND IT

20 WAS UNDER CALIFORNIA CLAW; CORRECT?

21          MS. WASSERMAN:  CORRECT.

22          THE COURT:  AND I KNOW FROM EXPERIENCE THERE'S TWO

23 WAYS ONE CAN GET TO THAT, EITHER FELONY DRUNK DRIVING WITH

24 INJURY, SOMEBODY GETS INJURED WHILE SOMEBODY IS DRIVING.  THAT

25 CONSTITUTES A FELONY.  OR I THINK THEY NOW HAVE A RECIDIVIST

1  PENALTY.  IF YOU HAVE BEEN CONVICTED OF DRUNK DRIVING, AND YOU

2  GET CONVICTED A SECOND TIME, THEY CAN MAKE THE SECOND ONE A

3  FELONY.  IT'S REALLY NEITHER HERE NOR THERE.  HAVE EITHER ONE

4  OF YOU LOOKED AT THAT TO DETERMINE WHAT THE NATURE OF THIS WAS?

5         MS. WASSERMAN:  YES, YOUR HONOR.  HE HAD THREE OR

6  FOUR PRIOR MISDEMEANOR DUI'S.

7         THE COURT:  SO THIS WAS BASED ON RECIDIVIST STATUTE

8  THEN.

9         MS. WASSERMAN:  CORRECT.

10        THE COURT:  I READ THE PAPERS, MR. EILERS.  I

11 CONCLUDE THAT AS OF THE DATE OF HIS DEPORTATION ON WHICH

12 THEY'RE RELYING THAT FELONY DRUNK DRIVING WAS CONSIDERED AN

13 AGGRAVATED FELONY.  I TAKE THE POINT THAT YOU MAKE THAT THAT

14 HAS SINCE CHANGED, AND IN PARTICULAR, THIS PARTICULAR STATUTE

15 THE NINTH CIRCUIT HAS RECOGNIZED IS NOT A CRIME VIOLENCE AND

16 WOULD NOT SERVE AS A PREDICATE AGGRAVATED FELONY TODAY; BUT

17 IT'S SORT OF LIKE THE ARROW'S LEFT THE BOW.  I CAN TELL YOU

18 THIS THIS IS NOT UNIQUE TO APPLICATION TO IMMIGRATION LAW.

19 THERE ARE A LOT OF PEOPLE IN FEDERAL PRISON NOW AND EARLIER

20 DEFINITIONS OF HOW FAR THE COMMERCE CLAUSE EXTENDED, FOR

21 EXAMPLE, THAT WOULD NOT BE IN FEDERAL PRISON TODAY, AND YET,

22 THAT DOES NOT PROVIDE A BASIS FOR ATTACKING THEIR OTHERWISE

23 FINAL DECISION.  SO THE RULING IN -- TELL ME THE NAME OF THE

24 CASE.

25        MS. WASSERMAN:  VIDAL-MENDOZA.

THE COURT:  VIDAL-MENDOZA IS REALLY CONSISTENT WITH
THE BODY OF FEDERAL LAW THAT SAYS THERE COMES A POINT WHERE A
CASE IS FINAL, AND WE'RE NOT GOING TO GO BACK AND REINVENT THE
WHEEL, OPEN UP CASES AGAIN, AND SUBJECT THEM TO SCRUTINY UNDER
A NEW AND DIFFERENT UNDERSTANDING OF LAW.  I THINK THAT MAKES
SENSE, AND I THINK THAT'S CONSISTENT, AS I SAID, WITH OTHER
AREAS OF FEDERAL LAW, AND I WOULD FIND THAT I'M GOING FOLLOW
THAT PRINCIPAL HERE.  AS I SAID, TO THE EXTENT THERE'S OTHER
AUTHORITY, IT'S OLDER, AND IT'S NOT AS REASONED.  VIDAL-MENDOZA
REALLY DEALT EXPRESSLY WITH THE ISSUE THAT I'M CONFRONTED WITH
HERE.  SO THAT, FOR STARTERS, ON THE ISSUE OF THE AGGRAVATED
FELONY.

                    I ALSO NOTE, THE GOVERNMENT, THAT MR. PERALTA WAS
PROPERLY AND COMPLETELY ADVISED OF HIS RIGHTS AND THAT HE
EXPRESSLY WAIVED HIS RIGHTS.  THE IMMIGRATION JUDGE COULDN'T
HAVE BEEN CLEARER IN SAYING YOU HAVE A RIGHT TO APPEAL THIS
DETERMINATION.  HE ASKED HIM TWICE AND ON BOTH OCCASIONS,
EITHER THE DEFENDANT DIDN'T ANSWER OR UNTIL THE SECOND OCCASION
ANSWERED THAT I UNDERSTAND, I ACCEPT THE DECISION, I'M NOT
GOING TO APPEAL IT.  SO I FIND THAT THERE WAS AN EXPRESS WAIVER
OF THE RIGHT TO APPEAL.  THERE WAS NO DEFECT IN TELLING HIM THE
GROUNDS FOR APPEAL.  SO I FIND THAT THE WAIVER WAS VALID AND
THAT THERE'S A FAILURE TO EXHAUST HERE; HIS REMEDY IN THE FIRST
INSTANCE WAS TO APPEAL THE DETERMINATION OF DEPORTABILITY AND
HE HAD THE OPPORTUNITY, WAS INFORMED OF THE OPPORTUNITY

1   PROPERLY AND DID NOT DO SO.  SO THAT CONSTITUTES A WAIVER.

2        EVEN IF I'M WRONG ON THAT, EVEN IF, YOU KNOW, THE LANGUAGE

3   SHOULD HAVE ABOUT MORE PARTICULAR OR SOMEONE SECOND GUESSES THE

4   IMMIGRATION JUDGE YEARS LATER NOW, I WOULD STILL FIND IN THIS

5   CASE THAT THERE'S NO PREJUDICE.  AS I UNDERSTAND IT, AT THE

6   TIME OF HIS DEPORTATION, HE HAD ALREADY BEEN REMOVED SEVERAL

7   TIMES AND HAD BOTH MISDEMEANOR AND FELONY CONVICTIONS, AND THE

8   ONLY RELIEF THAT HE WAS ELIGIBLE FOR, IF I'M FOLLOWING THE

9   RECORD AND THE PAPERWORK CORRECTLY, IS WITHDRAWAL OF --

10        MS. WASSERMAN:  YOUR HONOR, THERE'S TWO SEPARATE

11   DEPORTS.  THERE'S THE I.J., IMMIGRATION JUDGE DEPORT, AND THEN

12   THERE'S THE EXPEDITED REMOVAL.  SO AT THE TIME OF THE EXPEDITED

13   REMOVAL WHICH I BELIEVE THE COURT IS REFERRING TO, THE ONLY

14   POTENTIAL RELIEF IS WITHDRAWAL OF APPLICATION WHICH IN A CASE

15   LIKE THIS WHERE THE DEFENDANT WAS FOUND A MILE IN THE UNITED

16   STATES SHORT OF BEGS THE QUESTION HOW YOU CAN WITHDRAW AN

17   APPLICATION FOR ADMISSION WHEN YOU'RE --

18        THE COURT:  YEAH.  I HAVE CONFLATED THE TWO, BUT IT

19   APPEARS TO ME THERE WAS REALLY NO RELIEF FOR WHICH HE QUALIFIED

20   AT LEAST AS AN EXPEDITED REMOVAL.  I LOOK AT THE FIELD BOOK

21   FACTORS.  I JUST DON'T THINK HE WOULD HAVE QUALIFIED, AND I

22   CAN'T CONCEIVE THAT HE CAN MAKE A PLAUSIBLE SHOWING THAT HE

23   WOULD HAVE BEEN GRANTED SOME TYPE OF RELIEF.  AS MS. WASSERMAN

24   POINTS OUT, THE FORM OF RELIEF, THE ONLY ONE HE MAY QUALIFY

25   FOR, PRESUPPOSES THAT HE STAYS ON HIS SIDE AND ASKS FOR THAT

1    RELIEF AND IT'S GRANTED, NOT THAT HE RESORTS TO SELF-HELP AND

2    IS CAUGHT OVER HERE AND THEN BRINGS IT UP.  SO I'M INCLINED TO

3    DENY THE MOTION TO DECLARE THE PRIOR DEPORTATIONS INVALID.  I

4    DON'T SEE ANY BASIS FOR DOING SO.  BUT I'M HAPPY TO HEAR FROM

5    YOU BEFORE I MAKE A FINAL DECISION.  THAT'S JUST PRELIMINARILY,

6    MR. EILERS.

7              MR. EILERS:  THANK YOU, YOUR HONOR.  FOR THE MOST

8    PART, WE WOULD SUBMIT ON THE BRIEFS THAT YOUR HONOR HAS READ.

9    YOU CONSIDERED MY ARGUMENTS ON MOST OF THOSE ISSUES.  THERE'S

10   ONE PARTICULAR ISSUE I'D LIKE TO FLUSH OUT A LITTLE BIT MORE

11   FOR THE RECORD BEFORE THE COURT ISSUES A FINAL RULING ON THIS

12   MOTION, AND IT HAS TO DO WITH EXHAUSTION OF ADMINISTRATIVE

13   REMEDIES AND ALSO DEPRIVATION OF JUDICIAL REVIEW WITH RESPECT

14   TO THE 1999 REMOVAL BY AN IMMIGRATION JUDGE.

15    IN MY MEMO AT PAGE FIVE, I CITED TO CAMACHO-LOPEZ AND

16   ESSENTIALLY MADE A PRETTY MUCH SUMMARILY, I SUMMARILY SORT OF

17   CONCLUDED PURSUANT TO CAMACHO THAT BECAUSE HE WASN'T REMOVAL AS

18   CHARGED HE HAD, THEREFORE, THE OTHER PRONGS OF 1326(D) WERE

19   SATISFIED, THAT HE HAD SATISFIED THE EXHAUSTION AND DEPRIVATION

20   REQUIREMENTS, AND I'D LIKE TO FLUSH THAT OUT A LITTLE BIT MORE

21   FOR THE RECORD.  I CITE TO CAMACHO WHICH CITED TO UNITED STATES

22   VERSUS PALLARES-GALAN, 359 F.3D 1088.  IN THAT CASE, WHAT THE

23   NINTH CIRCUIT SAID WAS WHERE AN IMMIGRATION JUDGE ERRONEOUSLY

24   DETERMINES THAT SOMEONE HAS BEEN CONVICTED OF AN AGGRAVATED

25   FELONY, AND THEREBY DOESN'T ADVISE THEM OF RELIEF THAT THEY'RE

ELIGIBLE FOR, THAT THEY'RE EXCUSED FROM EXHAUSTING
ADMINISTRATIVE REMEDIES BECAUSE THEIR WAIVER OF APPEAL WAS NOT
CONSIDERED INTELLIGENT AND THEN THEY'RE ALSO DEPRIVED A
MEANINGFUL OPPORTUNITY FOR JUDICIAL REVIEW.  THAT CASE CITES TO
UNITED STATES VERSUS LEON-PAZ, 340 F.3D 1003, FOR THE SAME
PROPOSITION.

          IN THIS CASE WE ARGUE THAT MR. PERALT-SANCHEZ HAD NOT
BEEN CONVICTED OF AN AGGRAVATED FELONY AND THEREFORE NOT
DEPORTABLE AS CHARGED.  THE FACT IF, IF OUR ARGUMENT IS
CORRECT, HE HAD NOT BEEN CONVICTED OF AN AGGRAVATED FELONY, HE
THEREFORE, WOULD HAVE BEEN ELIGIBLE FOR A NUMBER OF FORMS OF
RELIEF.  FOR EXAMPLE, HE WOULD HAVE BEEN ELIGIBLE FOR
CANCELLATION OF REMOVAL PURSUANT TO 8 U.S.C. SECTION 1229(B)(A)
OR I.N.A. SECTION 240(A)(A) WHICH REQUIRES THAT HE BE L.P.R. OR
LEGAL PERMANENT RESIDENT FOR AT LEAST FIVE YEARS, HAVE RESIDED
IN THE U.S. CONTINUOUSLY FOR AT LEAST SEVEN YEARS AND NOT BEEN
CONVICTED OF AN AGGRAVATED FELONY.  AND MR. PERALTA-SANCHEZ
BECAME AN L.P.R. IN 1990.  SO HE WOULD HAVE BEEN ELIGIBLE FOR
THAT FORM OF RELIEF, AND ON THAT BASIS, THE IMMIGRATION JUDGE
NOT ADVISING HIM THAT HE WAS ELIGIBLE FOR RELIEF MAKES IT SO
HIS WAIVER OF APPEAL WAS NOT CONSIDERED INTELLIGENT AND ALSO
DEPRIVES HIM OF JUDICIAL REVIEW.

          ONE OTHER THING WITH RESPECT TO THAT.  WE'RE ALSO
ARGUING THAT THE IMMIGRATION JUDGE'S ADVISAL IN THIS PARTICULAR
CASE, IN THE TRANSCRIPTS THE GOVERNMENT PROVIDED IN THEIR

1 RESPONSE WAS AN INSUFFICIENT ADVISAL. THE IMMIGRATION JUDGE

2 ASKED MR. PERALTA -- WELL, WHAT THE IMMIGRATION JUDGE TOLD MR.

3 PERALTA WAS THAT FEDERAL LAW REQUIRED HIS DEPORTATION, AND HE

4 DIDN'T HAVE ANY CHOICE BUT TO DEPORT HIM. THE SAME THING

5 HAPPENED IN CAMACHO SORT OF WHERE THE IMMIGRATION JUDGE HAD

6 ASKED THE DEFENDANT IN THAT CASE IF HE WAIVED APPEAL, AND THE

7 DEFENDANT IN THAT CASE SAID, WELL, HE DOESN'T REALLY HAVE A

8 CHOICE. OUR ARGUMENT HERE IS THAT THE IMMIGRATION JUDGE GAVE

9 THE IMPRESSION THAT AN APPEAL WOULD BE FUTILE, AND THAT'S

10 COMPOUNDED BY THE FACT MR. PERALTA DIDN'T HAVE COUNSEL WITH HIM

11 AT THAT, AND SO THAT'S AN ALTERNATIVE WAY IN WHICH THE WAIVER

12 OF APPEAL WAS NOT CONSIDERED INTELLIGENT.

13 THE COURT: WAS CAMACHO MY CASE? I REMEMBER ONE

14 WHERE THE IMMIGRATION JUDGE TOLD THE PERSON, LOOK, CONCEIVABLY

15 YOU CAN HAVE THIS, BUT I NEVER GRANT IT TO PEOPLE WITH A

16 CRIMINAL RECORD SO HE SORT OF TOOK IT AWAY IN THE SAME BREATH

17 THAT HE ADVISED HIM, AND THE NINTH CIRCUIT FOUND THAT THAT WAS

18 INVALID ADVICE.

19 MR. EILERS: THIS WAS OUT OF THE NORTHERN DISTRICT.

20 THE COURT: OKAY. SO IT WASN'T MINE. BUT I'M

21 FAMILIAR WITH THE PRINCIPAL. HERE IS AN OBSERVATION, AND YOU

22 CAN RESPOND TO THIS. THE LINCHPIN TO ALL THIS THESE ARGUEMENTS

23 ABOUT EXHAUSTION IS THAT THE UNDERLYING CONVICTION WAS NOT AN

24 AGGRAVATED FELONY, RIGHT?

25 MR. EILERS: WELL, THE OTHER ARGUMENT IS THAT IT'S AN

1  INSUFFICIENT ADVISAL.

2          THE COURT:  I GET THAT.  LET'S TALK ABOUT THE FIRST

3  ARGUMENT THAT YOU MADE THAT THE LINCHPIN TO THAT IS THAT I

4  WOULD HAVE TO FIND THIS WAS NOT AN AGGRAVATED FELONY SO HE WAS

5  MISINFORMED ABOUT THAT, AND THE ONLY WAY I CAN DO THAT IS BY

6  RETROACTIVELY APPLYING NINTH CIRCUIT LAW BACK TO A TIME WHEN

7  IT'S PRETTY CLEAR TO ME AND THE BIA AUTHORITY, AND EVEN THE

8  NINTH CIRCUIT, I KNOW THE NINTH CIRCUIT RULEE ON AN ARIZONA

9  DRUNK DRIVING, FELONY DRUNK DRIVING CASE THAT QUALIFIES AS AN

10  AGGRAVATED FELONY, BUT I DON'T SEE MUCH DIFFERENCE BETWEEN THE

11  TWO STATUTES.  AND I ALREADY SAID I CHOOSE NOT TO DO THAT.  I

12  DON'T THINK THE NINTH CIRCUIT REQUIRES THAT.  SO IF THAT'S

13  CORRECT, IF THE VIDAL-MENDOZA LINE OF AUTHORITY IS CORRECT, YOU

14  DON'T REVISIT THESE THINGS BECAUSE THE LAW HAS CHANGED AS TO

15  THE NATURE OF THE UNDERLYING AGGRAVATED FELONY, THEN THAT

16  FORECLOSES THIS ARGUMENT, RIGHT?

17          MR. EILERS:  WELL, I DO HAVE A COUPLE COMMENTS TO

18  THAT.  AS WE POINT OUT IN OUR MOTION, IT'S OUR POSITION THAT

19  LOPEZ-VELASQUEZ AND VIDAL-MENDOZA WERE LIMITED TO THE

20  CIRCUMSTANCE WHERE WE'RE TALKING ABOUT RETROACTIVITY IN THE

21  CONTEXT OF THE I.J.'S DUTY TO ADVISE SOMEBODY OF APPARENT

22  ELIGIBILITY FOR RELIEF AND THAT CAMACHO-LOPEZ -- THAT THAT CASE

23  APPLIES IN THIS CONTEXT WHERE WE'RE TALKING ABOUT WHETHER

24  SOMEONE IS REMOVABLE AND THAT THERE'S HEIGHTENED DUE PROCESS,

25  PROTECTIONS IN REMOVABILITY CONTEXT AS OPPOSED TO THE

1  ELIGIBILITY FOR RELIEF CONTEXT THAT MANIFESTS ITSELF IN A FEW

2  WAYS.  FOR EXAMPLE, BURDEN OF PROOF IS ON THE GOVERNMENT IN THE

3  REMOVABILITY CONTEXT WHEREAS THE BURDEN IS ON THE RESPONDENT

4  WITH RESPECT TO ELIGIBILITY FOR RELIEF THAT RELIEF IS ACTUALLY

5  DISCRETIONARY.  AND THERE'S A DIFFERENCE BETWEEN REMOVABILITY

6  AND APPARENT ELIGIBILITY FOR RELIEF AND ITS RETROACTIVITY.  AS

7  POINTED OUT, MOST RECENTLY, UNITED STATES VERSUS GOMEZ, I CITED

8  THE FOOTNOTE IN MY PAPERS, WENT THROUGH AND POINTED OUT THAT

9  CAMACHO-LOPEZ DOES APPLY IN THE REMOVABILITY CONTEXT WHEREAS

10  VIDAL-MENDOZA WOULD BE MORE FOR ELIGIBILITY FOR RELIEF.  I

11  THINK I UNDERSTAND WHAT THE COURT IS SAYING IN TERMS OF HOW

12  THIS WOULD ALSO APPLY IN THE CONTEXT OF EXHAUSTION OF

13  ADMINISTRATIVE REMEDIES AND ALSO DEPRIVATION FOR JUDICIAL

14  REVIEW.

15:43:49  15       THE COURT:  IT'S BROADER THAN THAT.  IT'S A CONCEPT

16  OF FINALITY OF JUDGMENT AT SOME POINT.  EVEN THOUGH THE LAW

17  CHANGES OVER TIME, THERE'S, YOU KNOW, FINALITY OF JUDGMENT THAT

18  PRECLUDES CATEGORIES OF PEOPLE FROM NOT AVAILING THEMSELVES OF

19  IT.  I'M PERSONALLY FAMILIAR WITH A CASE.  THIS GUY CONTINUES

20  TO MALIGN ME.  WHEN I WAS A LAWYER I CONVICTED A GUY HERE IN

21  FEDERAL COURT OF BLOWING UP, ACTUALLY BURNING A BOAT AND

22  BLOWING UP A VAN.  AT THAT TIME, JONES VERSUS UNITED STATES AND

23  ALL THE OTHER COMMERCE CLAUSE CASES THAT SAY THERE HAS TO BE A

24  MUCH MORE DIRECT CONNECTION WITH COMMERCE HAD NOT YET BEEN

25  DECIDED, AND THE COMMERCE NEXUS WAS KIND OF ELASTIC.  AND SO

1   YOU HAD CASES THERE WHERE, FOR EXAMPLE, IF NATURAL GAS WAS

2   FLOWING TO SOMEBODY'S HOUSE AND THE NATURAL GAS CAME FROM OUT

3   OF STATE OR AT LEAST IN PART CAME OUT OF STATE, THAT WAS ENOUGH

4   OF A CONNECTION, AS TENUOUS AS IT WAS WITH COMMERCE, TO JUSTIFY

5   FEDERAL PROSECUTION FIRST.  WE NOW KNOW THAT'S NOT THE CASE.

6   THERE'S BEEN LEAGUES OF DEFENDANTS WHO WERE CONVICTED UNDER

7   THOSE STATUTES AND WHOSE CONVICTIONS ARE NOW FINAL WHO AFTER

8   JONES WENT BACK AND SAID, WELL, I WANT RELIEF; I WASN'T REALLY

9   CONVICTED OF AN OFFENSE BECAUSE THE SUPREME COURT CLARIFIED

10  THAT THE COMMERCE CLAUSE DOESN'T EXTEND AS FAR AS THE

11  GOVERNMENT ADVOCATED IN THOSE CASES.  INVARIABLY, THE ANSWER

12  HAS BEEN NO.  YOU'RE RIGHT.  IF YOU WERE TRIED ON THAT BASIS

13  TODAY, IT WOULDN'T BE A SUFFICIENT BASIS.  BUT YOU WEREN'T.

14  YOU WERE TRIED ON A DIFFERENT BASIS WITH THE UNDERSTANDING IT

15  WAS DIFFERENT.  WE'RE NOT GOING TO DISRUPT ALL THOSE OUT OF

16  RESPECT FOR FINALITY OF JUDGMENT, AND YOU KNOW, IT WOULD JUST

17  BE CHAOS ACROSS THE BOARD IF WE'RE CONSTANTLY REOPENING CASES

18  BECAUSE OF A DIFFERENT ITERATION ON THE CHARACTER OF A PRIOR,

19  FOR EXAMPLE, DIFFERENT INTERPRETATION.  AND THAT JUST SEEMS TO

20  ME LIKE AN INSENSIBLE RESULT TO DO THAT, TO OPEN CASES UP EVERY

21  TIME AND PARTICULARLY IN THE CONTEXT OF PRIOR CONVICTIONS.  I

22  MADE THIS COMMENT BEFORE AND IT'S APT HERE AS WELL.  IN RESPECT

23  TO ACHIEVING ITS OBJECTIVE, TAYLOR VERSUS UNITED STATES WAS AN

24  ABJECT FAILURE.  SUPREME COURT TOLD US, WELL, WE'RE GOING TO

25  AVOID MINI TRIALS ON PRIOR SO WE'RE GOING TO HAVE THIS RULE AND

1 IT WILL LEAD TO BRIGHT LINE DETERMINATIONS.  AND GUESS WHAT?

2 HERE WE'RE 15 YEARS OUT OR 20 YEARS OUT, AND EVERY SINGLE CASE

3 TURNS INTO MINI TRIAL ON THE PRIOR.  AND IT'S NOT SURPRISING

4 WITH THAT GOING ON THAT DIFFERENT COURTS WILL REACH CONCLUSIONS

5 THAT ARE DIFFERENT THAN PREDECESSOR COURTS ON THE NATURE OF THE

6 PRIOR.  LOOK AT WHAT HAPPENED THIS LAST TERM WITH THE SUPREME

7 COURT'S DETERMINATION ON PRIORS WHERE THEY CAN BE -- TELL ME

8 THE WORDS OF ART.  HELP ME WITH THE NOMENCLATURE HERE.  I'M

9 HAVING A LAPSE.  THOSE WERE THE ALTERNATIVE ELEMENTS OR PART OF

10 THE CASE WHERE YOU HAVE TO --

11        MR. EILERS:  DIVISIBLE?

12        THE COURT:  DIVISIBLE VERSUS INDIVISIBLE STATUTE.

13 THAT WAS A WATER SHED CHANGE, PARTICULARLY AFTER AN EN BANC

14 COURT IN THE NINTH CIRCUIT SAID, NO, WE CAN LOOK PAST THIS, AND

15 THE SUPREME COURT CLARIFIED, NO, NO, IT'S JUST ELEMENTS.

16 IMAGINE IF WE OPEN UP ALL THE CASES THAT WERE BASED ON SOME

17 DIFFERENT UNDERSTANDING OF WHAT WAS DIVISIBLE AND WHAT WAS NOT.

18 MY POINT IS, THROUGHOUT CRIMINAL JURIS PRUDENCE AT LEAST,

19 THERE'S SOME RESPECT FOR PRECEDENT EVEN THOUGH PRECEDENT IS NO

20 LONGER PRECEDENT, EVEN THOUGH THE UNDERSTANDING HAS BEEN

21 CHANGED.  SO I TAKE YOUR POINT THAT, YOU KNOW, THERE'S A

22 DIFFERENCE BETWEEN HIS BURDEN AND THE GOVERNMENT'S, AND

23 REMOVABILITY VERSUS ELIGIBILITY FOR RELIEF.  WHILE THAT'S A

24 DISTINCTION, I DON'T THINK IT'S ONE THAT MAKES A DIFFERENCE

25 HERE IN LIGHT OF THE PURPOSE BEHIND FINALITY.  I JUST DON'T

1   THINK IT'S AN INROAD TO THE CHAOS THAT WOULD BE CREATED BY

2   OPENING UP CASES WHERE AN IMMIGRATION JUDGE FAITHFULLY APPLIED

3   EXISTING LAW, FOUND THAT A PERSON WAS DEPORTABLE ONLY TO LEARN

4   YEARS LATER PERHAPS THAT THOSE ASSUMPTIONS WERE NOW CHANGED

5   BECAUSE THE COURT OF APPEALS, IN THIS CASE THE NINTH CIRCUIT,

6   HAS CHANGED ITS UNDERSTANDING OF THE NATURE OF THAT FELONY.  IT

7   DOESN'T MEAN THE JUDGE WAS WRONG AT THE TIME.  THE JUDGE DID

8   EVERYTHING CORRECT.

9           REMEMBER WE'RE TALKING ABOUT DUE PROCESS.  DUE

10  PROCESS MEANS THAT HE CORRECTLY APPLIED THE LAW AND GAVE THE

11  DEFENDANT THE PROCESS HE WAS DUE AT THE TIME.  HE DID.  AND THE

12  FACT THAT THE NINTH CIRCUIT NOW VIEWS FELONY DRUNK DRIVING

13  DIFFERENTLY, IT'S NOT AN AGGRAVATED FELONY NECESSARILY, IT

14  DOESN'T MEAN HE WAS DEPRIVED OF DUE PROCESS AT THE TIME.  THAT

15:48:41  15  WAS THE PROCESS HE WAS DUE ACCORDING TO THE PRECEDENTS AT THE

16  TIM, AND REALLY DOESN'T TURN ON WHO HAD THE BURDEN ON THAT.

17          AS TO THE OTHER ARGUMENT, I JUST DON'T SEE -- I

18  THOUGHT, FRANKLY, THAT THE IMMIGRATION JUDGE'S ADVICE TO THE

19  DEFENDANT AT THE TIME OF THE HEARING WAS PRETTY MUCH OPEN-ENDED

20  AND ALLOWED HIM TO MAKE THE DECISION.  I DON'T SEE ANYTHING IN

21  THE NATURE OF CAMACHO AND THE OTHER CASE I ELUDED TO -- THE

22  NAME OF WHICH I CAN'T REMEMBER -- WHERE ESSENTIALLY THE

23  IMMIGRATION JUDGE WAS, YOU KNOW, SAYING ONE THING OUT OF ONE

24  SIDE OF HIS MOUTH BUT TELLING ANOTHER.  IT'S ON PAGE FOUR OF

25  THE GOVERNMENT'S PLEADING WHERE THEY SAY, THE IMMIGRATION JUDGE

1  IS QUOTED SAYING, SIR, I'M GOING TO ORDER YOUR DEPORTATION TO

2  THE UNITED STATES TO MEXICO BECAUSE THAT'S WHAT FEDERAL LAW

3  REQUIRES ME TO DO, DOESN'T GIVE ME ANY CHOICE; RIGHT?

4           MR. EILERS:  RIGHT.

5           THE COURT:  HE THEN GOES ON AFTER THAT AND SAYS, YOU

6  HAVE A RIGHT TO APPEAL MY DECISION IF YOU DISAGREE OR YOU CAN

7  ACCEPT IT.  SO IF HE THINKS HE'S WRONG ABOUT THAT, I DON'T SEE

8  -- I JUST DON'T SEE THE SAME SITUATION THAT WAS PRESENTED IN

9  CAMACHO OR EVEN THE OTHER CASE.  HE DIDN'T FORECLOSE APPEAL,

10  AND YOU KNOW, THE DEFENDANT MAY WELL HAVE SAID, WELL, I WANT TO

11  APPEAL THIS; I'M NOT IN AGREEMENT WITH IT.  YOU'RE SAYING HE

12  DID HAVE A CHOICE, THAT HE COULD HAVE GIVEN HIM RELIEF AT THAT

13  POINT?  IS THAT WHAT YOUR POSITION IS?

14           MR. EILERS:  WELL, ARE WE TALKING ABOUT --

15           THE COURT:  WE'RE TALKING ABOUT THE ADVICE THE

16  IMMIGRATION JUDGE GAVE HIM.  YOU'RE SAYING THAT'S FLAWED, AND

17  IF I UNDERSTAND YOU CORRECTLY, YOU'RE SAYING THE FLAWED PART IS

18  HE STATED DEFINITIVELY THAT HE DIDN'T HAVE A CHOICE; HE HAD TO

19  DEPORT THIS FELLOW GIVEN THE FINDING OF AN AGGRAVATED FELONY.

20  YOU'RE SAYING, THAT'S NOT CORRECT; ESSENTIALLY, HE HAD OTHER

21  OPTIONS?

22           MR. EILERS:  NO, JUST THAT THE WAY IN WHICH THE

23  IMMIGRATION JUDGE FRAMED IT, SAYING THAT FEDERAL LAW IS

24  REQUIRING ME TO DO THIS, I DON'T HAVE A CHOICE WOULD GIVE

25  SOMEONE LIKE MR. PERALTA, WHO IS UNSOPHISTICATED AND

1  UNREPRESENTED BY COUNSEL, PERHAPS THE IMPRESSION THAT

2  EXERCISING HIS RIGHT TO APPEAL WOULD BE FUTILE UNDER THOSE

3  CIRCUMSTANCES.

4          THE COURT:  IS THAT TRUE?  DID THE JUDGE HAVE ANY

5  WIGGLE ROOM AT THE TIME GIVEN HIS RECORD?  I MEAN, FOR THE

6  JUDGE TO STATE ACCURATELY WHAT HIS OPTIONS WERE, WHICH ARE NONE

7  -- I MEAN, IT'S LIKE ME WHEN I THINK OF WHAT I SOMETIMES SAY TO

8  DEFENDANTS ON THESE MANDATORY MINIMUM CASES.  I WOULDN'T GIVE

9  YOU THIS IF IT WERE UP TO ME, BUT I HAVE TO GIVE IT TO YOU, AND

10  IT PUTS THE DEFENDANT IN A REAL DILEMMA BECAUSE HE SAYS, GIVE

11  ME WHAT YOU THINK IS FAIR, AND I TELL HIM, NO I CAN'T.  I'M

12  REQUIRED TO GIVE YOU THIS OTHER SENTENCE.  THAT DOESN'T

13  FORECLOSE AN APPEAL.  I STILL IN THOSE CASE FREQUENTLY ADVISE

14  PEOPLE OF THEIR APPEAL.  THEY DON'T HAVE A SENSE OF FUTILITY

15  ABOUT IT.  I THINK THEY TAKE IT AT FACE VALUE THAT I TOLD THEM

16  I DON'T HAVE ANY WIGGLE ROOM HERE.  I HAVE TO DO WHAT THE

17  PRECEDENT DEMANDS AND LAW DEMANDS.  IT SOUNDS TO ME THAT'S

18  ESSENTIALLY WHAT THIS IMMIGRATION JUDGE IS SAYING TO HIM THAT

19  GIVEN YOUR BACKGROUND AND THINGS YOU ADMIT, THERE'S NO

20  DISPENSATION HERE.  YOU GOT TO GO.  YOU GOT TO BE DEPORTED.

21  WAS THAT A CORRECT STATEMENT FOR THE IMMIGRATION JUDGE TO

22  MAKE?

23          MR. EILERS:  THE IMMIGRATION JUDGE WAS MOST LIKELY

24  RELYING ON BIA PRECEDENT TO COME TO A DECISION THAT IT WAS IN

25  FACT AN AGGRAVATED FELONY, IF HE WAS IN FACT CONVICTED OF AN

1   AGGRAVATED FELONY THEN OF COURSE HE WOULDN'T HAVE BEEN ELIGIBLE

2   FOR RELIEF.  BUT WHAT WE'RE TALKING ABOUT HERE IS USING THIS

3   DEPORTATION AS A PREDICATE TO A CRIMINAL PROSECUTION, AND I

4   THINK THERE'S BROADER, EQUITABLE THINGS AT STAKE WHEN WE'RE

5   TALKING ABOUT WHETHER SOMEONE WAS REMOVABLE AS CHARGED IN LIGHT

6   OF THE FACT THAT SUBSEQUENT NINTH CIRCUIT AND SUPREME COURT

7   CASE LAW COMES OUT SAYING, LISTEN, THIS ISN'T AN AGGRAVATED

8   FELONY; AND IN NIGHT OF THAT, HAD MR. PERALTA GONE THROUGH THE

9   SAME PROCESS A COUPLE YEARS LATER, HE WOULDN'T HAVE BEEN

10  REMOVABLE AS CHARGED; HE WOULD HAVE BEEN ELIGIBLE FOR FORMS OF

11  RELIEF AND THINGS WOULD HAVE COME OUT DIFFERENTLY.

12          THE COURT:  YOU'RE SAYING THEN THAT THIS JUDGE COULD

13  HAVE SAID, INSTEAD OF I'M DOING WHAT FEDERAL LAW REQUIRES ME --

14  MAYBE THAT WAS OKAY TO SAY BUT HE ALSO SHOULD HAVE SAID, YOU'RE

15  ONLY OUT HERE AS TO APPEAL AND CHALLENGE SOME EXISTING

16  PRECEDENT WHICH WOULD GIVE ME A LITTLE WIGGLE ROOM, AND SO TO

17  THAT EXTENT YOU HAVE A RIGHT TO APPEAL; WOULD THAT HAVE MADE IT

18  OKAY?

19          MR. EILERS:  YOU KNOW, IF HE WOULD HAVE GONE INTO

20  THAT ADDITIONAL DETAIL THAT WOULD HAVE HELPED.  EXPLAINING WHAT

21  IT MEANS TO APPEAL COULD HAVE BEEN HELPFUL; EXPLAINING THAT THE

22  LAW CAN CHANGE WOULD HAVE BEEN HELPFUL.  THOSE ARE THE KINDS OF

23  THING, ESPECIALLY IN THE CONTEXT OF A DEPORTATION PROCEEDING

24  WHERE SOMEONE IS BEING HELPED BY AN INTERPRETER AND NOT BEING

25  REPRESENTED BY COUNSEL ARE KINDS OF THINGS THAT WOULD HAVE BEEN

1  HELPFUL IN THIS CASE AND WOULD HAVE CONTRIBUTED TO WHAT WE

2  THINK SHOULD HAVE BEEN CONSIDERED IN INTELLIGENT WAIVER OF

3  APPEAL, BUT IT WAS NOT.

4        THE COURT:  OKAY.  I HAVE YOUR POSITION ON THAT.

5  ANYTHING ELSE?

6        MR. EILERS:  OTHER THAN THAT, YOUR HONOR, WE'RE

7  PREPARED TO SUBMIT ON THE MOTION SO LONG AS THE COURT

8  CONSIDERED ALL OF THE ARGUEMENTS LAID OUT IN THE MOTION.

9        THE COURT:  I BELIEVE I HAVE.  I BELIEVE I ADDRESSED

10  THEM.  I SPOKEN TO WHAT I PERCEIVE TO BE THE TWO MAJOR

11  ARGUMENTS.  AS I SAID, THE LINCHPIN IS THE DETERMINATION FIRST

12  THAT MAYBE THIS IS NOT NOW AN AGGRAVATED FELONY.  I AGREE IT

13  WOULDN'T BE CONSIDERED ONE NOW.  BUT THAT'S CHANGED IN THE LAW

14  THAT WAS NOT THE CASE IN 1999.  WHEN I LOOK AT IT FROM THE

15:54:15  15  PERSPECTIVE OF WHAT WAS THE LAW THEN AND WHAT THE IMMIGRATION

16  JUDGE WAS BOUND TO APPLY AND FOLLOW, I FIND NO DUE PROCESS

17  VIOLATION.  I DISAGREE -- I UNDERSTAND THE ARGUMENTS, BUT I

18  DISAGREE THAT THE JUDGE ESSENTIALLY CHILLED THE DEFENDANT IN

19  EXHAUSTING HIS RIGHT TO APPEAL.  THE JUDGE MADE AN ACCURATE

20  STATEMENT OF WHAT HE WAS REQUIRED TO DO HAVING FOUND, HAVING

21  CORRECTLY APPLIED EXISTING PRECEDENT AT THE TIME THAT FELONY

22  DRUNK DRIVING WAS AN AGGRAVATED FELONY, AND AS A RESULT, THE

23  DEFENDANT HAD TO BE DEPORTED, WAS NOT ELIGIBLE FOR ANY RELIEF,

24  THE JUDGE PROPERLY AND CORRECTLY INFORMED THE DEFENDANT OF

25  THAT.  HE NEVERTHELESS WENT ON AND TOLD THE DEFENDANT HE COULD

1  APPEAL.  I DON'T THINK THE JUDGE HAD TO SUGGEST TO HIM THE LAW

2  MAY CHANGE.  THAT'S ALWAYS THE CASE.  IF THAT WERE THE CASE,

3  I'D TELL EVERY DEFENDANT THAT THE LAW MAY CHANGE, AND YOU CAN

4  APPEAL ON THAT BASIS.  EVEN THOUGH I SUGGESTED THIS TO YOU, I

5  DON'T EVEN THINK THE JUDGE HAD A DUTY TO TELL HIM YOU CAN

6  CHALLENGE THESE PRECEDENTS.  JUDGES ARE REQUIRED TO FOLLOW

7  PRECEDENT, AND THEY'RE BINDING.  WE HAVE FINALITY OF JUDGMENT

8  DEPENDANT UPON THAT.  SO TO SUGGEST OR INVENT A REASON FOR THE

9  DEFENDANT TO APPEAL -- HE TOLD HIM HE HAD A RIGHT TO APPEAL AND

10  THE DEFENDANT SAID HE UNDERSTOOD IT AND WOULD ACCEPT THAT.  I

11  DON'T SEE ANY TAKING AWAY IN THE LANGUAGE THE JUDGE USED TO

12  TELL HIM WHAT THE JUDGE'S OBLIGATIONS WERE GIVEN THE FINDING OF

13  THE AGGRAVATED FELONY.  SO LET ME GO BACK TO WHERE I WAS ON

14  THAT.  THAT BEING THE CASE, I JUST DON'T FIND ANY PREJUDICE

15  WITH RESPECT TO THE REINSTATEMENT EITHER.

16          MS. WASSERMAN:  JUST TO CLAIRIFY, YOUR HONOR, IT'S

17  NOT A REINSTATEMENT.  IT WAS A WHOLE NEW DEPORT.

18          THE COURT:  OH, THE OTHER ONE WAS.  IT WAS EXPEDITED

19  REMOVAL.

20          MS. WASSERMAN:  RIGHT.  THERE'S THE TWO DEPORTS AT

21  ISSUE.  THERE'S THE I.J. HEARING.  THEN HE GETS A WHOLE NEW

22  DEPORT.  OUR ARGUEMENT IS EVEN IF THE I.J. WAS FLAWED, HE GOT A

23  WHOLE NEW PROCESS, WHOLE NEW DEPORT, AND THAT DEPORT STANDS ON

24  ITS OWN.

25          THE COURT:  NO CHALLENGE IS MADE AS TO ADEQUACY OF

1  THE EXPEDITED REMOVAL, RIGHT?

2         MR. EILERS:  WE MADE A FEW DIFFERENT ARGUMENTS WITH

3  RESPECT TO THE EXPEDITED REMOVAL.  ONE OF THE ARGUMENTS IS IT'S

4  SORT OF A FRUIT OF THE POISONOUS TREE SORT OF ARGUEMENT, THAT

5  THE EXPEDITED REMOVAL IS INVALID BECAUSE THE I.J. REMOVAL IS

6  INVALID BECAUSE ASSUMING OUR ARGUMENT IS CORRECT THAT THE 1999

7  I.J. REMOVAL IS INVALID, THAT THEY TOOK HIS LEGAL PERMANENT

8  RESIDENCY WHEN THEY NEVER SHOULD HAVE AND DEPORTED HIM WHEN

9  THEY NEVER SHOULD HAVE, LEFT HIM WITH NO RECOURSE IN TERMS OF

10  -- PUTTING HIM IN EXPEDITED REMOVAL PROCEEDINGS CUTS HIM OFF

11  FROM THE KIND OF RECOURSE THAT IMMIGRATION JUDGES HAVE BEEN

12  KNOWN TO DO.

13         THE COURT:  HE WOULDN'T HAVE BEEN SUBJECT TO

14  EXPEDITED REMOVAL HAD HE BEEN A LAWFUL PERMANENT RESIDENT? HE

15  WOULD NOT HAVE BEEN?

16         MR. EILERS:  RIGHT.

17         THE COURT:  I GET IT THEN.  I SEE THE CONNECTION

18  BETWEEN THE TWO.  THE DATE OF THE EXPEDITED REMOVAL IS 2002?

19         MS. WASSERMAN:  2012, YOUR HONOR.

20         THE COURT:  RATHER THAN BE CONFUSED ABOUT THIS, LET

21  ME GO BACK AND DEAL WITH EACH OF THE DEPORTS.  AS TO THE '99,

22  MY FINDING IS THAT IMMIGRATION JUDGE CORRECTLY APPLIED EXISTING

23  LAW AND THAT THIS COURT IS BOUND TO LOOK AT IT IN LIGHT OF THE

24  EXISTING LAW RATHER THAN SUBSEQUENT CHANGE IN THE LAW THAT

25  OCCURRED AFTER EXISTING LAW WAS CORRECTLY APPLIED.  THAT WOULD

HAVE BEEN 1999.  SO I DON'T APPLY CHANGES IN THE NINTH
CIRCUIT'S DETERMINATION OF WHETHER A CASE IS AN AGGRAVATED
FELONY THAT OCCURRED AFTERWARDS, AND I'M NOT IN THIS CASE.  I'M
BASING IT ON BIA AND NINTH CIRCUIT PRECEDENT UP TO THE TIME THE
DEFENDANT'S '99 DEPORTATION TOOK PLACE THAT FOUND FELONY DRUNK
DRIVING WAS AN AGGRAVATED FELONY.  SECOND, WITH RESPECT TO THE
ADVICE HE GOT, I ALREADY MADE MY FINDING AS TO THAT, BUT I
THINK THE ADVICE WAS PROPER.  IT DIDN'T COERCE THE DEFENDANT TO
SHOW HIS EXERCISE OF HIS RIGHT TO APPEAL WHICH HE WAS PROPERLY
TOLD ABOUT.

        WITH RESPECT TO THE EXPEDITE REMOVAL IN 2012, AGAIN,
I FIND THAT WAS PROPER.  HAVING REJECTED THE ARGUMENT THAT
THERE WAS IMPROPRIETY IN THE '99 REMOVAL, I WOULD HAVE TO FIND
THAT FIRST BECAUSE THEN BASED ON THAT HE WOULD STILL, I WOULD
ASSUME, BE A LAWFUL PERMANENT RESIDENT, AND HE WOULD HAVE HAD
AVENUES OPENED TO HIM IN 2012 OF WHICH HE WAS NOT ADVISED.
THAT WAS NOT THE CASE.  HIS LAWFUL PERMANENT RESIDENCY HAD BEEN
REVOKED.  HE HAD BEEN DEPORTED.  I FOUND THOSE THINGS WERE
PROPER.  SO THE PREDICATE IS MISSING FROM HIM TO BE ELIGIBLE
FOR ANY RELIEF IN 2012.  ACCORDINGLY, I FIND THE EXPEDITED
REMOVAL WAS APPROPRIATE.  WITH RESPECT TO THAT, I DON'T FIND
ANY PREJUDICE TO THE DEFENDANT.  I JUST DON'T THINK IT'S
PLAUSIBLE THAT THERE WOULD HAVE BEEN ANY OTHER OUTCOME IN THAT
ONE.  EVEN IF HE HAD BEEN ELIGIBLE FOR SOME FORM OF RELIEF, THE
GUY THAT HAD BEEN CONVICTED AND REMOVED FROM THE UNITED STATES

| | |
|---|---|
| 15:59:19 | 1 |
| | 2 |
| | 3 |
| | 4 |
| | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| | 10 |

1  BEFORE, IN MY JUDGMENT, IS NOT LIKELY TO QUALIFY FOR

2  ALTERNATIVES TO DEPORTATION IN 2012.  SO I FIND EITHER OR BOTH

3  OF THE PRIORS ARE SUFFICIENT TO SUPPORT A CHARGE.  WHETHER THE

4  REST OF THE ELEMENTS ARE MET, THAT'S FOR THE STIPULATED FACTS

5  TRIAL.  BUT WITH ALL RESPECT AND UNDERSTANDING YOUR ARGUMENTS,

6  MR. EILERS, THE 1326(D) MOTION IS DENIED FOR THOSE REASONS.

7  IF YOU'LL GIVE ME JUST A MINUTE, I WANT TO LOOK AT

8  THE STIPULATED FACTS, AND THE GOVERNMENT HAS TENDERED SOME

9  EXHIBITS.  I TAKE IT YOU HAVE NO OBJECTION TO THE COURT

10  ADMITTING THE TENDERED EXHIBITS?  IS THERE JUST ONE?

11  MS. WASSERMAN:  NO, YOUR HONOR.  THERE SHOULD BE FIVE

12  EXHIBITS THERE.  THEY'RE ADMITTED SUBJECT TO THE STIPULATION,

13  BUT I BELIEVE DEFENDANT REQUESTED THEY BE SUBJECT TO AN ONGOING

14  OBJECTION PURSUANT TO 1326(D).  SO ONLY SUBJECT TO HIS 1326(D).

16:00:20  15  THE COURT:  HE PRESERVED THAT BY BRINGING THE MOTION.

16  OKAY.  GIVE ME JUST A MINUTE.

17  I HAVE ONE QUESTION HERE, MS. WASSERMAN.  THIS SOUNDS

18  SILLY AND NIT-PICKING, BUT I SAW A STATE CASE REVERSED WHERE

19  THE STIPULATION WAS FRAMED IN TERMS OF THIS PERSON WOULD

20  TESTIFY.  THAT'S A HYPOTHETICAL, AND THEY JUMPED ON THAT, AND

21  THEY SAID A STIPULATION THAT A PERSON WOULD TESTIFY DOESN'T

22  MEAN HE HAD TESTIFIED AND THE COURT CAN ACCEPT THOSE FACTS.

23  MS. WASSERMAN:  YOUR HONOR, I USED AN EXAMPLE FROM A

24  COLLEAGUE WHO HAD JUST DONE ONE OF THESE VERY RECENTLY.

25  THE COURT:  I JUST REMEMBER IN THE BACK OF MY MIND

1  THAT "WOULD TESTIFY" DOESN'T MEAN THAT HE DID AND SOMEBODY

2  TAKING A VERY TECHNICAL APPROACH -- DO YOU WANT ME TO STRIKE

3  THE "WOULD" AND SAY THE AGENT, IT'S STIPULATED THAT HE HAS

4  TESTIFIED TO THIS EVENT?

5          MS. WASSERMAN:  NO OBJECTION.

6          THE COURT:  YOU OBJECT TO THAT?

7          MR. EILERS:  NO.

8          THE COURT:  SO I'M GOING TO STRIKE THIS "WOULD."

9  AGAIN, I THOUGHT IT WAS PRETTY SILLY, BUT I DO REMEMBER A CASE

10  WAS REVERSED ON A STIPULATED FACTS TRIAL BECAUSE THE

11  STIPULATION WAS A THING THAT COULD HAPPEN, HYPOTHETICALLY COULD

12  HAPPEN, NOT SOMETHING THAT DID HAPPEN.  THAT CHANGE IS ON PAGE

13  2 LINE 15.  EXHIBIT ONE IS THE '99 REMOVAL?

14          MS. WASSERMAN:  CORRECT.

15          THE COURT:  I HAVE TO SAY, MR. PERALTA, YOU HAVEN'T

16  AGED VERY MUCH IN 15 YEARS.  YOU LOOK ABOUT THE SAME AS IN THIS

17  PICTURE.  MAYBE A LITTLE LOSS OF HAIR, BUT THAT HAPPENS TO ALL

18  OF US.  BUT YOUR FACE LOOKS ABOUT THE SAME.  THE AUTHENTICITY

19  OF THESE DOCUMENTS IS NOT BEING CHALLENGED.  YOU AGREE THESE

20  ARE THE DEPORTATION PAPERS, A-FILE PAPERS THAT PERTAIN TO MR.

21  PERALTA?

22          MR. EILERS:  YES.

23          THE COURT:  THE COURT, SUBJECT TO THE 1326(D) MOTION

24  AND ITS RULING ON THAT AND THE OBJECTION THAT IS PRESERVED,

25  ADMITS GOVERNMENT'S EXHIBITS ONE THROUGH FIVE.  I HAVE READ THE

1    STIPULATED FACTS.  GIVE ME ONE MINUTE.  I KNOW THE ELEMENTS

2    LIKE THE BACK OF MY HAND, BUT I THINK I OWE IT TO MR. PERALTA

3    AND THE PARTIES TO GO OVER THE NINTH CIRCUIT PATTERN

4    INSTRUCTION PERTAINING TO THIS OFFENSE BEFORE I ENTERTAIN

5    ARGUMENT.  BOTH SIDES AGREE IF THIS CASE WOULD HAVE GONE TO

6    JURY AND A JURY WOULD HAVE BEEN CHARGED THAT THE COURT WOULD

7    HAVE BEEN OBLIGATED TO GIVE INSTRUCTION 9.6, DEPORTED ALIEN

8    REENTERING THE UNITED STATES WITHOUT CONSENT?  THIS IS NOT A

9    FOUND IN CASE, WAS IT?

10         MS. WASSERMAN:  THIS WAS A FOUND IN.

11         THE COURT:  FOUND IN.  SO I THINK ITS STILL 9.6.

12         MS. WASSERMAN:  I BELIEVE IT'S 9.8.

13         THE COURT:  YES.  I'M SORRY.  9.8, YOU AGREE THAT'S

14   THE APPLICABLE INSTRUCTION TO WHICH THE JURY WOULD HAVE BEEN

15   CHARGED IN THIS CASE?

16         MR. EILERS:  YES.

17         MS. WASSERMAN:  YOUR HONOR, THERE'S ACTUALLY TWO

18   COUNTS.  THERE'S THE 1325 WHICH IS COUNT ONE AND 1326 WHICH IS

19   COUNT TWO.  SO THE 9.8 WOULD GO TO COUNT TWO.

20         THE COURT:  1325 SIMPLY REQUIRES REENTRY AFTER

21   PREVIOUS ILLEGAL REENTRY, NOT NECESSARILY ONE RESULTING IN

22   CONVICTION, BUT ONE ENTERS AFTER ILLEGALLY REENTERING ON A

23   PRIOR OCCASION?

24         MS. WASSERMAN:  I BELIEVE SO, YOUR HONOR.  IN ANY

25   EVENT, THE DEFENDANT STIPULATED TO THE PRIOR 1325.

1           THE COURT:  THOSE ARE THE ELEMENTS OF A FELONY 1325,

 2   CORRECT, MR. EILERS?

 3           MS. WASSERMAN:  I BELIEVE IT REQUIRES A CONVICTION ON

 4   THE PREDICATE.

 5           THE COURT:  I DON'T THINK SO.  I THINK IT JUST

 6   REQUIRES ILLEGAL ENTRY.  REMEMBER WHEN WE TAKE THE 1325 FELONY

 7   PLEAS, THE PERSON A LOT OF TIMES WASN'T CONVICTED, BUT HE

 8   STIPULATED HE REENTERED AND WOULD FILL IN THE DATE THAT HE

 9   ILLEGALLY ENTERED BEFORE.  WE CAN LOOK THAT UP.  I'M PRETTY

10   SURE THAT'S THE CASE.  ILLEGAL REENTRY.  I DON'T THINK IT

11   REQUIRES A PREDICATE CONVICTION.

12           MS. WASSERMAN:  IN ANY EVENT, YOUR HONOR, HE DOES

13   HAVE A PREDICATE CONVICTION HERE.

14           THE COURT:  1325 STATUTE PROVIDES ANY ALIEN WHO

15   ENTERS OR ATTEMPTS TO ENTER THE UNITED STATES AT ANY TIME OR

16   PLACE OTHER THAN DESIGNATED BY IMMIGRATION OFFICERS OR

17   ALTERNATIVELY ELUDES EXAMINATION OR INSPECTION BY IMMIGRATION

18   OFFICERS OR THIRD POSSIBILITY IS ATTEMPTS TO ENTER OR OBTAINS

19   ENTRY TO THE UNITED STATES BY WILLFULLY, FALSE OR MISLEADING

20   REPRESENTATIONS OR WILLFUL CONCEALMENT OF A MATERIAL FACT,

21   SHALL FOR THE FIRST OFFENSE BE FINED UNDER ANOTHER TITLE, BUT

22   IMPRISONED NOT MORE THAN SIX MONTHS.  THAT'S THE MISDEMEANOR.

23   AND FOR A SUBSEQUENT COMMISSION OF SUCH OFFENSE BE FINED, AGAIN

24   ANOTHER TITLE, IMPRISONED NOT MORE THAN TWO YEARS.  IT DOESN'T

25   SPEAK OF CONVICTIONS.  IT SPEAKS OF PRIOR ILLEGAL ENTRIES ON

1  ONE OF THOSE THREE BASIS.  I THINK THAT'S THE REQUIREMENT, THAT

2  THE GOVERNMENT ONLY PROVE THAT THERE WAS, FOR A 1325, A

3  PREDICATE ILLEGAL ENTRY.

4       MR. EILERS:  I BELIEVE THERE'S A CASE INTERPRETING

5  THAT STATUTE AND SAYING THAT A CONVICTION IS REQUIRED FOR THE

6  PREDICATE ENHANCEMENT, BUT I COULD BE INCORRECT, BUT I BELIEVE

7  THAT'S THE CASE.  EITHER WAY, WE STIPULATED TO THE --

8       THE COURT:  I UNDERSTAND.  BUT I WANT TO MAKE SURE I

9  HAVE IT STRAIGHT WHAT THE REQUIREMENT IS.  I UNDERSTAND IT'S

10  STIPULATED THAT EVEN IF IT'S REQUIRED THAT HE HAS A PRIOR, THAT

11  HE'S ADMITTED THAT HE DOES HAVE ONE?

12       MS. WASSERMAN:  YOUR HONOR, I BELIEVE THE UNITED

13  STATES ACTUALLY CITED A CASE IN ITS TRIAL MEMO.  IT'S UNITED

14  STATES VERSUS RODRIGUEZ-GONZALES, 358 F.3D 1156, 2004, WHERE I

15  THINK THE NINTH CIRCUIT DID FIND YOU NEED A PREDICATE

16  CONVICTION AND THE NINTH CIRCUIT FOUND THE BEST WAY TO SHOW

17  THAT CONVICTION IS THE CONVICTION DOCUMENTS.

18       THE COURT:  SO YOU'RE SAYING THEY INTERPRET 1325 TO

19  REQUIRE A PRIOR CONVICTION?

20       MS. WASSERMAN:  I THINK SO, YOUR HONOR.

21  UNFORTUNATELY, I DON'T HAVE THAT CASE IN FRONT OF ME TO REVIEW.

22  BUT THAT'S WHAT I PUT IN MY TRIAL MEMO.

23       THE COURT:  SO HERE IT IS.  WHAT IS THE NAME OF THE

24  CASE YOU WERE CITING?

25       MS. WASSERMAN:  RODRIGUEZ-GONZALES?

1          THE COURT:  I FOUND ANOTHER CASE, ARRIAGA-SEGURA, 743

2     F.2D 1436.  IT SAYS, TO ESTABLISH THE PRIOR OFFENSE, THE

3     GOVERNMENT MUST SHOW A CONVICTION NOT MERELY THAT THE DEFENDANT

4     COMMITTED THE OFFENSE MORE THAN ONCE.  SO THAT BACKS UP WHAT

5     YOU ARE SAYING.  THAT IS ILLUMINATING FOR ME.  I SEEM TO

6     REMEMBER A TIME WHEN WE WERE TAKING THESE 1325 PLEAS, AND ALL

7     THE DEFENDANT WAS DOING WAS FILLING IN, YOU KNOW, AND A LOT OF

8     TIMES I THOUGHT JUST INVENTING AN EARLIER TIME HE MADE AN

9     ILLEGAL ENTRY INTO THE UNITED STATES FOR THE PREDICATE.

10          MR. EILERS:  I THINK WHAT THE COURT IS REFERRING TO

11     WHAT'S CALLED A 30-MONTH CHARGE BARGAIN WHERE IF SOMEONE

12     DOESN'T HAVE A PRIOR ILLEGAL ENTRY, AND THEN TO CREATE A

13     STATUTORY MAXIMUM THEY WOULD INVENT ESSENTIALLY THE MISDEMEANOR

14     PREDICATE AND THEN PLEAD GUILTY TO BOTH SIMULTANEOUSLY.

15          THE COURT:  WELL, IT WAS A CONVICTION THOUGH IF HE'S

16     PLEADING SIMULTANEOUSLY, RIGHT?  IT'S AN EARLIER OFFENSE THAT

17     HADN'T RESULTED YET IN A CONVICTION IF HE'S PLEADING

18     SIMULTANEOUSLY.

19          MR. EILERS:  IT'S SORT OF A LEGAL FICTION THAT HAS

20     APPARENTLY WORKED FOR SOME TIME.

21          THE COURT:  DO YOU UNDERSTAND MY POINT?  IF HE'S

22     PLEADING SIMULTANEOUSLY TO THE MISDEMEANOR AND FELONY, IT

23     PRE-SUPPOSES THE MISDEMEANOR WAS NOT IN PLACE AT THE TIME HE

24     COMMITTED THE FELONY; HE HASN'T YET PLEAD TO IT.

25          MR. EILERS:  THAT'S SOMETHING I ALWAYS WONDERED

1 ABOUT, BUT IT'S WORKED.

2 THE COURT: IT GOES BACK TO THE LANGUAGE OF THE

3 STATUTE WHICH DOESN'T SAY YOU HAVE TO BE CONVICTED OF IT. IT

4 ONLY SAYS YOU HAVE TO HAVE UNLAWFULLY DONE IT. WELL, OKAY,

5 I'LL ASSUME FOR PURPOSES OF THIS CASE THAT THERE HAS TO BE A

6 CONVICTION FOR AN EARLIER MISDEMEANOR CHARGE OR EARLIER ILLEGAL

7 ENTRY, WHETHER FELONY OR MISDEMEANOR. AND WITH RESPECT TO 9.8,

8 THE COURT HAS REVIEWED THE JURY INSTRUCTION ON THAT. IT

9 COMPORTS WITH MY RECOLLECTION. THE ELEMENTS ARE AS FOLLOWS.

10 THAT DEFENDANT WAS REMOVED OR DEPORTED FROM THE UNITED STATES

11 SOMETIME PRIOR TO THE DATE CHARGED IN THE INDICTMENT; SECOND,

12 THAT HE THEREAFTER VOLUNTARILY REENTERED; THIRD, AT THE TIME HE

13 REENTERED, HE KNEW THAT HE WAS ENTERING THE UNITED STATES. IT

14 WASN'T MISTAKE OR WALK-ABOUT. IT WAS VOLITIONAL,

15 PURPOSE-DRIVEN CONDUCT WITH AN AWARENESS THAT HE WAS CROSSING

16 THE BORDER LINES. AND FOURTH, HE HAD NOT OBTAINED PERMISSION

17 OF THE UNITED STATES TO BE IN THE UNITED STATES; AND FINALLY,

18 FIFTH, HE WAS AN ALIEN WHICH MEANS HE WASN'T A NATURAL BORN

19 NATURALIZED CITIZEN AT THAT TIME HE WAS FOUND IN THE UNITED

20 STATES. SO APPLYING THAT STATUTE TO THE ADMITTED FACTS, HERE

21 THE DEFENDANT ADMITS THAT HE WAS FOUND IN THE UNITED STATES.

22 PARAGRAPH 1.3 ESTABLISHES THAT AFTER THE AGENT TRACKED HIS

23 FOOTPRINTS, WHAT HE BELIEVED TO BE THE FOOTPRINTS OF ILLEGAL

24 ENTRANTS FOR FOUR TO FIVE HOURS, THE DEFENDANT WAS FOUND WITH

25 ANOTHER PERSON JUST SOUTHWEST OF OLD HIGHWAY 80, HIDING IN

BRUSH.  THAT LOCATION IS SIX MILES NORTH OF THE U.S. BORDER.

THE AGENT INTERVIEWED THE DEFENDANT.  HE ADMITTED HE WAS A

MEXICAN CITIZEN.  HE HAD NO DOCUMENTS.  IT'S ADMITTED THAT THE

DEFENDANT WAIVED HIS MIRANDA RIGHTS, AND AGAIN, CONFIRMED HE

DIDN'T HAVE A LEGAL RIGHT TO BE IN THE UNITED STATES.  HE ALSO

ADMITTED, ACCORDING TO PARAGRAPH 2.3 ON PAGE TWO, THAT HE HAD

BEEN PREVIOUSLY DEPORTED.  THAT ADMISSION CORROBORATES

DOCUMENTS THAT HAD BEEN OFFERED BY THE UNITED STATES THAT SHOWS

TWO PRIOR DEPORTATIONS THAT I DISCUSSED, ONE IN '99 AND ONE IN

2012.

PAGE THREE OF THE STIPULATED FACTS, PARAGRAPH FOUR,

THE DEFENDANT ADMITS HE'S A CITIZEN AND NATIONAL OF MEXICO AND

NOT OF THE UNITED STATES.  HE ADMITS HE HAD BEEN ORDERED

REMOVED AND IN FACT REMOVED FROM THE UNITED STATES IN 1999 AND

2012.  HE ADMITS, THIS IS PERTINENT TO -- COUNT ONE IS THE

1325, MS. WASSERMAN?

MS. WASSERMAN:  YES, YOUR HONOR.

THE COURT:  THAT HE DID SUFFER A CONVICTION FOR

ILLEGAL ENTRY AS A FELONY.  I'M ASSUMING THAT'S AS A FELONY.

IT'S GOT A FELONY CASE NUMBER ASSOCIATED WITH IT.

MS. WASSERMAN:  YES, YOUR HONOR.

THE COURT:  NOVEMBER 19, 2012, WHICH WOULD SUPPLY THE

PREDICATE OFFENSE; THAT INDEED IS WHAT'S REQUIRED, ASSUMING IT

IS FOR ILLEGAL REENTRY OFFENSE UNDER 1325.  AND HE ADMITS IN

PARAGRAPH NINE THAT HE DIDN'T APPLY FOR, WHICH IS KIND OF A

| 16:16:03 | 1 | ROUNDABOUT WAY OF SAYING HE DIDN'T HAVE ANY PERMISSION FROM THE |

ROUNDABOUT WAY OF SAYING HE DIDN'T HAVE ANY PERMISSION FROM THE
UNITED STATES GOVERNMENT TO BE IN THE UNITED STATES ON THE DATE
THAT HE WAS FOUND HIDING IN THE BUSH BY HIGHWAY 80.  SO ANY
ARGUMENT, OR IS THE MATTER SUBMITTED?

MR. EILERS:  WE'LL SUBMIT, YOUR HONOR.

MS. WASSERMAN:  YOUR HONOR, I'LL JUST NOTE THAT IN
PARAGRAPH EIGHT HE ALSO AGREES TO THE SUBSEQUENT TO DATE WHICH
IS JANUARY 30TH, 2014.  THE COURT JUST DIDN'T MENTION THAT
PARTICULAR FACT.

THE COURT:  IS THAT CHARGED IN THE INDICTMENT TOO?

MS. WASSERMAN:  SUBSEQUENT TO NOVEMBER 19TH, 2012,
AND  THAT IS CHARGED IN THE INDICTMENT.  SO WHAT PROVIDES THAT
ELEMENT IS THE FACT HE ADMITTED HE WAS REMOVED ON --

THE COURT:  YOU'RE RIGHT.  I DO NOTE THAT IS
STIPULATED TO THAT THE DEFENDANT ADMITS HE WAS REMOVED FROM THE
UNITED STATES SUBSEQUENT TO JANUARY 30, ON JANUARY 30, 2014.
SO SUBSEQUENT TO THE CONVICTION OF THE EARLIER CASE?

MS. WASSERMAN:  SUBSEQUENT TO NOVEMBER 19TH, 2012.

THE COURT:  YEAH.  OKAY.  ALL RIGHT.  WELL, THE
STIPULATED FACTS MATCH UP WITH THE ELEMENTS.  THEY MATCH UP
WITH THE ELEMENTS OF 1325.  THE COURT FINDS THAT THE DEFENDANT
HAD NO LEGAL RIGHT TO BE IN THE UNITED STATES AS OF THE DATE
THAT HE WAS FOUND HERE, MARCH 8TH, 2014.  I FIND THAT HE WAS A
CITIZEN OF ANOTHER COUNTRY, NOT A CITIZEN OR NATIONAL OF THE
UNITED STATES, AND THE CIRCUMSTANTIAL EVIDENCE INDICATES THAT

1  HE HAD ENTERED PURPOSEFULLY, VOLITIONALLY.  HE WAS CLEARLY IN

2  THE UNITED STATES AT THE POINT HE WAS ENCOUNTERED.  HE DOES

3  HAVE A PRIOR CONVICTION FOR ILLEGAL ENTRY AS A FELONY.  I DO

4  FIND BEYOND A REASONABLE DOUBT THAT THE DEFENDANT IS GUILTY OF

5  THE OFFENSE CHARGED IN COUNT ONE, IN VIOLATION OF TITLE 8,

6  UNITED STATES CODE SECTION 1325, IMPROPER ENTRY BY AN ALIEN.

7         TURNING TO COUNT TWO, THE COURT INCORPORATES ITS

8  FINDINGS AS TO THE ENTRY AND THE DEFENDANT BEING FOUND IN AND

9  THE LACK OF PERMISSION TO BE HERE.  I DO FIND HE HAD NO

10  PERMISSION FROM THE UNITED STATES GOVERNMENT TO BE HERE AS OF

11  THE DATE OF HIS APPREHENSION.  I DO FIND THAT HE HAD BEEN

12  DEPORTED TWICE BEFORE HIS APPREHENSION ON THIS CASE, AND I DO

13  FIND FURTHER THAT HE WAS DEPORTED AT LEAST ONE TIME AFTER HE

14  WAS CONVICTED OF THE 1325 FELONY THAT'S REFERENCED IN THE

16:18:30  15  STIPULATED FACTS HAVING OCCURRED IN NOVEMBER 2012.  SO ALL THAT

16  TO SAY, I DO FIND HIM GUILTY OF COUNT TWO.  I FIND THOSE FACTS

17  BEYOND A REASONABLE DOUBT AS WELL, AND I DO FIND A SPECIAL

18  FINDING AS TO THE DATE OF DEPORTATION SUBSEQUENT TO NOVEMBER

19  2012 TO HAVE BEEN PROVED BEYOND A REASONABLE DOUBT.

20         SO I FOUND THE DEFENDANT GUILTY.  DO WE NEED TO PUT

21  THIS OUT FOR A PROBATION REPORT?  IS THERE ANYTHING SINCE HIS

22  CONVICTION 2012?  HAS THERE BEEN AN INTERVENING CONVICTION?

23         MS. WASSERMAN:  NOT SINCE 2012, YOUR HONOR.  I

24  BELIEVE HE'S IN CRIMINAL HISTORY CATEGORY SIX BASED ON ALL HIS

25  PRIORS.

1        THE COURT:  YOU PROBABLY WANT TO FILE SOMETHING.  YOU

2  PROBABLY DON'T WANT TO GO TO IMMEDIATE SENTENCING, BUT I DON'T

3  KNOW IF WE NEED TO GO 11 WEEKS.  MS. WASSERMAN, I'M INCLINED TO

4  GIVE THE DEFENDANT CREDIT FOR ACCEPTANCE OF RESPONSIBILITY.  I

5  UNDERSTAND THE COMMENTARY, BUT HERE WHAT HAS IT TAKEN US?  AN

6  HOUR OR SOMETHING?  THE DEFENDANT MADE THAT POSSIBLE BY

7  STIPULATING TO A STIPULATED FACTS TRIAL.  SO I THINK HE'S

8  ENTITLED TO THAT.  IT'S UP TO YOU IF YOU WANT TO ADD THE

9  ADDITIONAL POINT UNDER THE GUIDELINES CALCULATION.  BUT YOU CAN

10  ASSUME I'M GOING TO GIVE HIM CREDIT FOR ACCEPTING

11  RESPONSIBILITY.  I CAN GIVE UP TO TWO POINTS.  IF YOU CAN

12  CONVINCE HER TO DO THREE, I'M HAPPY TO ADD THAT THEN.

13        MR. EILERS:  I'LL DO WHAT I CAN.

14        THE COURT:  DO YOU WANT TIME TO FILE PAPERWORK?  IF

15  YOU WANT A PROBATION REPORT, I'LL ORDER ONE.

16        MR. EILERS:  THE COURT HAS ACCESS TO A PRESENTENCE

17  REPORT FROM THE 12-CR CASE?

18        THE COURT:  I BELIEVE I DO.

19        MR. EILERS:  I'VE SEEN A PRESENTENCE REPORT ON THAT

20  CASE.  I REPRESENT HIM ON AN ORDER TO SHOW CAUSE ON THAT CASE.

21        THE COURT:  IT'S BEEN FILED?

22        MR. EILERS:  YES.  SO THAT CASE IS GOING TO BE IN

23  FRONT OF YOUR HONOR AT THE SAME TIME.

24        THE COURT:  WHY DON'T WE DO THOSE TOGETHER THEN?

25  IT'S IN HIS INTEREST, I THINK, TO HAVE THOSE CASES SET AND

16:20:22   1   SENTENCED TOGETHER.  THE ONLY BASIS FOR THE ORDER TO SHOW CAUSE

           2   IS HIS NEW OFFENSE?

           3        MR. EILERS:  YES.  WE'RE APPEARING BEFORE THE

           4   MAGISTRATE JUDGE ON THE 12-CR CASE ON JULY 1ST.

           5        THE COURT:  WHY DON'T I JUST VACATE THAT?  HE CAN

           6   APPEAR HERE.  I'LL TAKE JUDICIAL NOTICE OF THE FINDINGS I MADE

           7   IN THIS CASE.  I WOULDN'T REQUIRE HIM MAKE ANY ADMISSIONS, AND

           8   WE'LL JUST DEAL WITH BOTH AT THE SAME TIME.

           9        MR. EILERS:  I THINK THAT WOULD BE BEST.

          10        THE COURT:  WHO IS THE MAGISTRATE JUDGE?

          11        THE CLERK:  IF HE CAN GIVE ME THE CASE NUMBER, I CAN

          12   CANCEL IT.

          13        MS. WASSERMAN:  12-CR-3370.

          14        THE COURT:  IF IT'S DOCKETED ON ONE OF THE MAGISTRATE

16:21:09  15   JUDGE'S CALENDARS, SEND THEM A NOTE THE COURT VACATED THAT

          16   DATE, THAT THE DEFENDANT HAS APPEARED AND BEEN TRIED, AND BY

          17   AGREEMENT, HE'LL APPEAR AND ANSWER ON THE ORDER TO SHOW CAUSE

          18   DIRECTLY IN FRONT OF ME ON THE DATE THAT WE SET.

          19        MR. EILERS:  IT'S JUDGE ADLER.

          20        THE COURT:  HOW MUCH TIME DO YOU THINK YOU'LL NEED?

          21        CONSULT WITH YOUR CLIENT.  IF HE WANTS A NEW, FRESH

          22   PROBATION REPORT, I'LL GIVE HIM THAT.  IF DOESN'T, NO NEED TO

          23   GO TO THAT EXPENSE AND THAT AMOUNT OF TIME.

          24        MR. EILERS:  CAN WE HAVE A BRIEF MOMENT?

          25        THE COURT:  SURE, OF COURSE.  I'M GOING TO ORDER THAT

| | |
|---|---|
| 16:21:58 | 1 |

THE EXHIBITS BE MADE PART OF THE FILE IN THIS CASE AND REMAIN

WITH THE FILE.  ORDINARILY, WE GIVE THEM BACK, BUT THEY'RE JUST

NOT VERY VOLUMINOUS SO I'M GOING TO LEAVE THEM.  THEY GO HAND

IN GLOVE WITH THE STIPULATED FACTS WHICH THE COURT ORDERS FILED

AS WELL.  OTHER THAN THE IMMIGRATION OFFENSE, DOES HE HAVE ANY

OTHER OFFENSE OTHER THAN THE OLDER?

MS. WASSERMAN:  HE HAS ONE PRIOR FELONY DUI, ANOTHER

PRIOR FELONY DUI SLASH POSSESSION OF CONTROLLED SUBSTANCE, BUT

THEY ARE ALL OLDER.

THE COURT:  OKAY.  THEY BOTH PRECEDE THE FIRST 1325

CONVICTION?

MS. WASSERMAN:  I BELIEVE SO, YES.

MR. EILERS:  IF WE CAN SET BOTH CASES.

MR. BINNINGER:  JUNE 30TH IF THAT'S POSSIBLE.

THE COURT:  HAS HE WAIVED HIS RIGHT TO A PRESENTENCE

REPORT?  ARE YOU CONTENT TO GO FORWARD ON THE OLD ONE?

MS. WASSERMAN, NOTHING HAS HAPPENED SINCE THE LAST

PROBATION REPORT FILED IN FRONT OF ME?

MS. WASSERMAN:  NOT THAT I'M AWARE, YOUR HONOR.

THE COURT:  DO YOU HAVE A COPY OF THAT?

MR. EILERS:  I DO, AND I HAVE ACCESS TO THE DOCKET

BECAUSE I'M NOTICED.

THE COURT:  IF HE'S CONTENT TO GO WITH THAT, I'LL

ALLOW YOU TO SUPPLEMENT IT WITH ADDITIONAL INFORMATION IF

YOU WANT.  IF HE WANTS A NEW PROBATION REPORT, WE CAN HAVE

1  ONE PREPARED; BUT MS. WASSERMAN TELLS ME THERE'S NO NEW

2  OFFENSE BETWEEN THEN AND NOW OTHER THAN THIS ONE.  SO I'M

3  ASSUMING HE HASN'T REENTERED AGAIN AND GOT CAUGHT THIS

4  TIME.  HE PROBABLY WOULD HAVE BEEN PROSECUTED IF HE HAD

5  REENTERED AND CAUGHT IN BETWEEN.  SO WE JUST HAVE FACTS

6  THAT I'M NOW AWARE OF ON TOP OF THE OLD PROBATION REPORT,

7  I CAN DO THAT IF'S AGREEABLE TO YOUR CLIENT AND TO YOU.

8  MR. EILERS:  YES, AND I CAN SUPPLEMENT THE RECORD

9  WITH A SENTENCING MEMORANDUM, AND I'LL MAKE SURE TO DO

10  THAT.

11  THE COURT:  OKAY.  SO JUNE 30TH AT 9:30.  MR.

12  PERALTA, I'LL SEE YOU BACK AT THAT TIME FOR SENTENCING ON

13  THIS CASE, AND THEN THERE'S AN OLD CASE WE'RE GOING TO

14  HAVE TO TALK ABOUT TOO.  YOU WERE STILL ON SUPERVISED

16:24:48  15  RELEASE.  BOTH OF THOSE CASE WILL BE IN FRONT OF ME ON THE

16  MORNING OF JUNE 30TH.

17  THE DEFENDANT:  VERY WELL.

18  THE COURT:  OKAY. I'LL SEE THEN.  WE'RE IN RECESS.

19  MS. WASSERMAN:  THANK YOU, YOUR HONOR.

20

21

22

23

24

25

1

2

3                    C-E-R-T-I-F-I-C-A-T-I-O-N

4

5          I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED
    AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES
    DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT

6   TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;
    THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY

7   STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES
    WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL

8   CONFERENCE.

9          DATED: SEPTEMBER 25, 2014, AT SAN DIEGO, CALIFORNIA.

10

11                    /S/ JULIET Y. EICHENLAUB
                      JULIET Y. EICHENLAUB, RPR, CSR
12                    OFFICIAL COURT REPORTER
                      CERTIFIED SHORTHAND REPORTER NO. 12084
13

14

15

16

17

18

19

20

21

22

23

24

25